IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**INNOVAK INTERNATIONAL, INC.,**

    **Plaintiff,**

vs.

                                                  **CASE NO.: 8:16-cv-02453-MSS-JSS**

**THE HANOVER INSURANCE COMPANY,**

    **Defendant.**
_____/

**THE HANOVER INSURANCE COMPANY'S
RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**COMES NOW,** Defendant, The Hanover Insurance Company ("Hanover"), through undersigned counsel, respectfully requests that this Honorable Court deny the Motion for Partial Summary Judgment (Rec. Doc. 19) filed by Plaintiff, Innovak International, Inc. ("Innovak"). Innovak is not entitled to partial summary judgment under Federal Rule of Civil Procedure 56 because it is indisputable that the subject commercial general liability policy issued to Innovak does not apply to losses allegedly resulting from a cyberattack at Innovak. Innovak seeks a judicial declaration that Hanover has a duty to defend Innovak against the Data Breach Class Action under Coverage B of the Policy. However, Innovak's argument is misplaced, as the subject data breach does not result from the intentional act of publication by Innovak of any information and, thus, there has been no "personal and advertising injury" as required by the terms of the Policy. Further, the Policy contains a Data Breach Form that specifically addresses the duties and obligations of the parties in the event of claims and/or a lawsuit arising from a data breach. The Policy expressly excludes the very duty – the duty to defend – that Innovak now seeks Hanover to perform.

For the reasons stated more fully below and for the reasons set forth in Hanover's Cross-Motion for Final Summary Judgment, which is being filed contemporaneously herewith, Innovak's Motion for Partial Summary Judgment (Rec. Doc. 19) should be denied, and Hanover's Cross-Motion for Final Summary Judgment should be granted.[1]

## I. BRIEF BACKGROUND

As this Court is now well aware, Innovak was the subject of a cyberattack and resulting data breach. On April 18, 2016, Melissa Bohannan and nine others (collectively, the "Underlying Plaintiffs") filed a class action against Innovak on their own behalf and on behalf of other similarly situated end users of Innovak's software in the U.S. District Court for the Middle District of Alabama styled *Melissa Bohannan v. Innovak International, Inc.*, Case No. 1:16-cv-272-WKW (the "Data Breach Class Action").[2] The Underlying Plaintiffs seek various forms of relief for the alleged theft of their personally identifiable information which they refer to as "Personal and Private Information" or "PPI." Innovak tendered its defense to Hanover under Policy No. ZH6A06623802 (the "Policy").[3] Hanover disclaimed coverage because Hanover's commercial general liability Policy does not cover the cyber claims asserted against Innovak in the Data Breach Class Action. Innovak filed this insurance coverage action in Florida state court, which Hanover removed to this Honorable Court.

---

[1] Hanover reserves all rights under the Policy (defined below) and at law, including, but not limited to any and all defenses to this claim which exist but are not addressed in this Response.

[2] Copies of the Class Action Complaint and First Amended Class Action Complaint filed in the Underlying Lawsuit are attached *in globo* as Exhibit "1" to Hanover's Cross-Motion for Summary Judgment.

[3] A true and correct copy of the Policy is attached as Exhibit "2" to Hanover's Cross-Motion for Summary Judgment. *See generally*, Ex. 2. The Policy affords commercial general liability insurance for the period August 1, 2015 to August 1, 2016, subject to certain terms, conditions, limitations, exclusions and endorsements and was in effect in April 2016 when Innovak allegedly admitted to a news organization that a data breach had occurred. *See* Ex. 1 (First Am. Comp.) at ¶34.

## II. STATEMENT OF FACTS

While Innovak acknowledges that the duty to defend is "based solely upon the allegations of the complaint and the terms of its policy,"[4] the legal arguments set forth in Innovak's motion are based on facts that are **not** alleged in the Data Breach Class Action. Innovak makes the following inaccurate statements in its motion, *i.e.*, that in the Data Breach Class Action:

- Innovak "is accused of negligently invading a third party's right to privacy"[5]; and

- "The Plaintiffs' underlying claims explicitly contend that Innovak negligently published software that was the cause of the publication of PPI by unknown third parties."[6]

This is **not** alleged. There is not one single allegation in the Data Breach Class Action that Innovak invaded anyone's privacy nor are the words "publish" and "publication" mentioned even once in the First Amended Class Action Complaint. The allegations, instead, are that Innovak failed to properly secure and safeguard PPI and prevent the "theft" of this information by third party hackers. This is a significant distinction given Innovak's attempt to seek insurance under Coverage B of the Policy. Innovak's motion should be denied on this basis alone.

## III. LAW AND ARGUMENT IN OPPOSITION

Innovak's argument that the allegations of the Data Breach Class Action fall under Coverage B of the Policy is misplaced. For coverage to attach under the Policy's Coverage B - Personal and Advertising Injury Coverage Part, the insured, *i.e.*, Innovak, must be sued for damages for "personal and advertising injury," a term that is defined in part as "[o]ral or written

---

[4] *See* Rec. Doc. 19 at p 2 of 17.
[5] *See* Rec. Doc. 19 at p 2 of 17.
[6] *See* Rec. Doc. 19 at p 14 of 17.

publication, in any manner, of material that violates a person's right of privacy."[7]  There was no publication here, much less a publication by Innovak.

### *Failure to Protect and Safeguard Does Not Equate to "Publication"*

Courts, including the Eleventh Circuit, recognize that the term "publication" in Coverage B, although not defined in the Policy, means "communication (as of news or information) to the public: public announcement" or "the act or process of issuing copies ... for general distribution to the public."[8]  The phrase "in any manner" merely "expands the categories of publication (such as email, handwritten letters, and, perhaps, 'blast-faxes') covered by the policy."[9]  Innovak offers no definition of "publication," presumably because it is clear that oral or written publication requires one to produce for publication or allow to be issued for distribution.  Neither of those intentional acts are alleged here.

The Innovak data breach quite clearly did not involve oral or written public announcement.  Nothing was distributed to the general public orally or in writing.  The allegations, instead, are that Innovak failed to have proper cybersecurity and that this alleged failure allowed nefarious hackers to appropriate or steal the subject PPI.[10]  However, the failure to safeguard electronic data clearly does not equate to an oral or written "publication" within the meaning of the Policy.[11]  Because the Underlying Plaintiffs allege appropriation of their PPI by

---

[7] *See* Ex. 2 to Hanover's Cross-Motion for Summary Judgment at Coverage B, Insuring Agreement.
[8] *Creative Hospital Ventures, Inc. v. U. S. Liability Ins. Co.*, 444 F. App'x 370, 375–76 (11th Cir. 2011) (quoting *Penzer v. Transportation Ins. Co*., 29 So. 3d 1000, 1005–1006 (Fla. 2010)).  "Publication occurs when information is 'placed before the public,' not when a member of the public reads the information placed before it." *Travelers Indem. Co. of Am. v. Portal Healthcare Sols*., LLC, 35 F. Supp. 3d 765, 771 (E.D. Va. 2014), *aff'd sub nom. Travelers Indem. Co. of Am. v. Portal Healthcare Sols., L.L.C*., 644 F. App'x 245 (4th Cir. 2016).  *See also Whole Enchilada, Inc. v. Travelers Prop. Cas. Co.*, 581 F. Supp. 2d 677, 696-97 (W.D. Pa. 2008); *Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 656, 572 (Mass. 2007).
[9] *Creative Hospital Ventures*, 444 F. App'x at 376.
[10] *See* Ex. 1 to Hanover's Cross-Motion for Summary Judgment (First Am. Comp.) at ¶¶1-2.
[11] *See Recall Total Information Management, Inc. v. Federal Ins. Co.*, 147 Conn. App. 450, 83 A.3d 664 (2014), aff'd, 317 Conn. 46, 115 A.3d 458 (2015) (finding the failure to secure information did not constitute "other publication" for purposes of personal and advertising injury); *Regents of Univ. of California v. Superior Court,* 220

hackers—not public dissemination of it—the First Amended Class Action Complaint does not allege a publication as required under Coverage B.

### *There Was No "Publication" by Innovak*

Even assuming *arguendo* that there has been a publication (which is denied), there still has been no publication by Innovak. While no South Carolina courts have had the opportunity to address the publication issue in the context of a data breach, other courts have held under similar facts that, for "personal and advertising injury" coverage to be implicated, the subject publication must be made by the insured.[12] For example, in *Zurich American Insurance Co. v. Sony Corp. of America*, a New York court considered whether an insurer had a duty to defend or indemnify its insured against a data breach claim involving a third-party hacking into the insured's software.[13] The core issue in the *Sony* case was whether accessing the claimants' information by the third-party hackers constituted a publication of material violating the claimants' right to privacy as necessary to trigger the policy's "personal and advertising" coverage.[14] Even though the policy did not expressly require publication by the insured, the *Sony* court held that the policy clearly did not cover publication by third parties.[15] The *Sony* court noted that interpreting the "personal and advertising" definition to include acts by third parties would amount to an expansion of coverage not bargained for by the insurer.[16]

---

Cal. App. 4th 549, 163 Cal. Rptr. 3d 205 (2013), as modified on denial of reh'g (Nov. 13, 2013) (finding the theft of a hard drive containing confidential medical information was not a "release" of the patient's information).

[12] Innovak's reliance on the *Corcino* case is misplaced. In *Corcino*, a California District Court considered whether an exclusion in the policy at issue there applied to the facts of that case because the insurer did not dispute that the underlying claim involved "electronic publication of material that violates a person's right to privacy" as necessary to trigger that policy's personal and advertising coverage. The underlying claim in *Corcino* – unlike the subject claims here – involved the insured intentionally and voluntarily providing the personal information to the nefarious individual who later published the information online. Thus, *Corcino* is inapposite to this matter.

[13] *Zurich American Insurance Co. v. Sony Corp. of America*, No. 651982/2011, 2014 WL 8382554 (N.Y. Sup. Feb. 21, 2014).

[14] *Id.* at 7-17.

[15] *Id.* at 34-37.

[16] *Id.*

Other courts addressing whether a third party's actions trigger coverage for "personal and advertising injury" have similarly held that "personal and advertising injury" requires affirmative actions by the insured.[17] In *Butts v. Royal Vendors Inc.*, the court found that publication by a third party did not trigger personal and advertising injury coverage because the insured must commit the affirmative act of publication.[18] Additionally, in *Miken Sales, Inc. v. Diamond State Ins. Co.*, the court found that an insured must engage in specific actions under the "personal and advertising injury" policy definition and not merely enable a third party's actions to trigger coverage.[19]

Here, the Underlying Plaintiffs' claims arise out of Innovak's failure to prevent the theft of PPI by third-party hackers. While PPI has allegedly been acquired by nefarious individuals with mal intent and some fraudulent accounts were allegedly opened and fraudulent social security returns/refunds filed in some of the Underlying Plaintiffs' names, the Data Breach Class Action does not arise out of or involve an oral or written publication of any kind by Innovak. The outcomes in *Sony*, *Butts*, and *Miken Sales* are consistent with South Carolina law, which requires courts to interpret policies as a whole and give the language its plain and ordinary meaning without torturing it.[20] A plain reading of the Policy's definition of "personal and advertising injury" together with Coverage B's insuring agreement instructs that Hanover "will pay those sums that the insured [Innovak] becomes legally obligated to pay as damages because of… publication … of material that violates a person's right to privacy." The only reasonable

---

[17] *See Butts v. Royal Vendors Inc.*, 504 S.E. 2d 911 (W.Va. 1998); *Miken Sales, Inc. v. Diamond State Ins. Co.*, 2007 LEXIS 7422 (C.D. Cal. Apr. 19, 2007). *See also*, *Camp's Grocery* (Ex. 5 to Hanover's Cross-Motion for Summary Judgment) at footnote 5 on p. 14 of the Memorandum Opinion wherein the court noted *in dicta* that if the insured grocery store had not abandoned its argument under Coverage B, the court would have found that "the underlying action does not allege … 'personal or advertising injury' for the reasons stated in State Farm's [the insurer's] brief" that there was no publication by the insured grocery store.
[18] *Butts*, 504 S.E. 2d at 917.
[19] *Miken Sales*, 2007 LEXIS 7422 at *9.
[20] *Canal Ins. Co. v. Nat'l House Movers, LLC*, 777 S.E. 2d 418, 421 (S.C. Ct. App. 2015).

construction of this language, as *Sony*, *Butts*, and *Miken Sales* make clear, is that the Coverage B offenses require conduct or publication by the insured, *i.e.*, by Innovak, to trigger coverage, which is not present here.

### *There Was No Intentional Conduct by Innovak*

Further, as developed in Hanover's cross motion for summary judgment, Coverage B is offense-based coverage that requires intentional conduct by the insured.[21] Thus, to establish a duty to defend under Coverage B's violation of privacy prong, Innovak must show that the Data Breach Class Action alleges that Innovak intentionally disclosed the Underlying Plaintiffs' PPI. Innovak cannot make that showing. The Underlying Plaintiffs allege, at most, that Innovak failed to safeguard their information or disregarded the hacking risk—conduct that falls short of intentional. Since the Data Breach Class Action does not allege that Innovak intentionally divulged the Underlying Plaintiffs' PPI, the First Amended Class Action Complaint does not allege a potentially covered claim for violation of the right to privacy and, consequently, Hanover has no duty to defend.[22]

### *The First-Party Data Breach Coverage Form*

Even though Data Breach Class Action results from a data breach, Innovak fails to mention to the Court that the Policy contains a Data Breach Coverage Form,[23] which is the only portion of the Policy that specifically addresses the duties and obligations of the parties in the

---

[21] *See, e.g., Cnty. of Columbia v. Cont'l Ins. Co.*, 634 N.E..2d 946, 950 (N.Y. 1994) ("[C]overage under the personal injury … provision … was intended to reach only purposeful acts undertaken by the insured or its agents."); *Gregory v. Tenn. Gas Pipeline Co.*, 948 F.2d 203, 209 (5th Cir. 1991) (personal injury coverage "requires active, intentional conduct by the insured"); *Harrow Prods. v Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1025 (6th Cir 1995) (holding that each enumerated offense in Coverage B requires an intentional act); *Stonelight Tile v Cal. Ins. Guar. Ass'n*, 58 Cal. Rptr. 3d 74, 89 (Cal. Ct. App. 2007) (noting that Coverage B offenses are based on intentional conduct and not accidental conduct).

[22] The absence of intentional conduct by Innovak undoubtedly explains why the Underlying Plaintiffs did not plead a privacy violation claim, which is an intentional tort under Alabama law. *See, e.g. Burton v. MAPCO Express, Inc.*, 47 F. Supp. 3d 1279, 1288 (N.D. Ala. 2014) (holding in a data breach case that the plaintiffs' invasion of privacy claim failed because "[u]nder Alabama law, invasion of privacy is an intentional tort" and the complaint did not allege "an intentional act of divulging … confidential information.")

[23] *See* Ex. 2 at Form 411-0669 (12/09)).

event of a cyberattack and resulting data breach lawsuit. In the instant case, the Data Breach Coverage Form does not provide coverage or the requested relief for two reasons: (i) Innovak failed to comply with the conditions precedent to coverage; and (ii) the Data Breach Coverage Form, which affords first-party coverage, expressly excludes fees, costs, settlements, and judgments related to a claim or lawsuit resulting from a data breach.

### *Innovak Failed to Comply with Conditions Precedent to Data Breach Coverage*

For coverage to attach under the Data Breach Coverage Form, the "data breach" [24] must be: (i) discovered during the Policy effective dates of August 1, 2015 to August 1, 2016; and (ii) reported to Hanover within 30 days of Innovak's discovery of the data breach. It is unclear from the pleadings when Innovak discovered the subject cyberattack or resulting data breach. At least one news story aired on April 11, 2016; [25] thus, Innovak must have discovered the data breach on or before April 11, 2016. However, Innovak did not report the data breach to Hanover until May 13, 2016 − 32 days later. [26] Accordingly, Hanover, in its Cross-Motion For Final Summary Judgment, seeks a judicial declaration that the coverages afforded under the Data

---

[24] "Data breach" means the "loss, theft, accidental release or accidental publication of private personal data entrusted to you as respects one or more potentially identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information. This definition of "data breach" is subject to the following provisions:
a. "Data breach" includes disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or distraction, subject to the following provisions:
   (1) your failure to use appropriate safeguards must be accidental and not intentional reckless or deliberate and not in violation of your due diligence obligations under paragraph 2. Additional Conditions, paragraph a; and
   (2) such disposal or abandonment must take place during the time period for which this "data breach" coverage form is effective.
b. "Data breach" includes situations where there is a reasonable cost to suspect that such "private personal data" has been lost stolen, accidentally released or accidentally published, even if there is no firm proof.
c. All incidents of "data breach" that are discovered at the same time or rise from the same cause or from a series of some of the causes would be considered one "data breach." All theft of "private personal data" caused by any person or in which the person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach." *See* Ex. 2 to Hanover's Cross-Motion for Summary Judgment at Form 411-0669 (12/09)).
[25] *See, e.g.*, Ex. 4 to Hanover's Cross-Motion for Summary Judgment. *See also*, http://www.wsmv.com/story/31693940/lamar-county-school-district-28-employees-personal-information-exposed-in-data-breach.
[26] *See* Ex. 3 to Hanover's Cross-Motion for Summary Judgment.

Breach Coverage Form are not triggered because Innovak failed to timely report the data breach to Hanover within 30 days of discovery as required.

### *The Data Breach Coverage Form Does Not Impose a Defense Obligation and Expressly Excludes Defense Costs Arising From a Data Breach*

The Data Breach Coverage Form provides first-party indemnity coverage to Innovak in the event of a data breach, including, for example, payment for legal counsel to advise on how to respond to the data breach, coverage for notification costs to third parties, coverage for a help line for affected third parties, and other costs typically associated with a data breach event. Even if Innovak had complied with the conditions precedent to coverage (which it did not), Hanover would still have no obligation to provide a defense because the Data Breach Form unequivocally states that "[a]ny fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages [or] lawsuit" are not covered.

In an unpublished decision from the case entitled *Camp's Grocery, Inc. v. State Farm and Casualty Co.*, No. 4:16-cv-00204-JEO (N.D. Ala. Oct. 25, 2015), an Alabama federal court considered whether a grocery store that suffered a cyberattack was entitled to coverage under a business owners policy. [27] Like Innovak, the insured grocery store argued that its non-cyber policy covered that cyber loss; however, the *Camp's Grocery* court disagreed. The Inland Marine Computer Property Form at issue there provided only first-party coverage and did not impose a duty on the insurer to defend or indemnify the insured against the claims arising out of a data breach. The *Camp's Grocery* court therefore entered summary judgment in favor of the insurer finding no duty to defend or indemnify. [28]

---

[27] *See generally*, Ex. 5 to Hanover's Cross-Motion for Summary Judgment.
[28] *Id.* at pp17-18.

Here, the Data Breach Coverage Form, a first-party form, not only fails to impose a duty on Hanover to defend and/or indemnify Innovak, it expressly excludes such obligations.[29] South Carolina courts have consistently stated that insurance policies may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business.[30] Innovak is asking the Court to ignore the only specific portion of the Policy that addresses claims and a lawsuit arising from a data breach because Innovak knows the Policy addresses and denies the very relief that it is asking the Court to grant.

## IV.   CONCLUSION

In an effort to fabricate insurance coverage, Innovak ignores and misstates the clear allegations contained in the Data Breach Class Action. There is absolutely no basis for Innovak's statements that it "is accused of negligently invading a third party's right to privacy"[31] and that "the Plaintiffs' underlying claims explicitly contend that Innovak negligently published software that was the cause of the publication of PPI by unknown third parties."[32] There are no such allegations contained in the Data Breach Class Action. The facts actually alleged in the Data Breach Class Action in no way involve a publication and/or an intentional publication by Innovak such as to trigger a duty to defend under the Policy's Coverage B Insuring Agreement.[33]

---

[29]   *See* Ex. 2 to Hanover's Cross-Motion for Summary Judgment at Data Breach Form 411-0669 (12/09).
[30]   *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E. 2d 327, 330 (S.C. 1999) (*quoting* Couch on Insurance 3d, § 130:14 (1997)).
[31]   *See* Rec. Doc. 19 at p 2 of 17.
[32]   *See* Rec. Doc. 19 at p 14 of 17.
[33]   Coverage B is subject to a Breach of Contract exclusion (paragraph f.) which applies to further bar coverage for any alleged "personal and advertising injury" arising out of any breach of contract, *i.e.*, Count II—Breach of Implied Contract. *See* Ex. 2. to Hanover's Cross-Motion for Summary Judgment. Hanover reserves the right to fully brief this issue at a later date in the event this dispositive motion is denied.

Further, the Policy contains a Data Breach Form that expressly excludes the very duty – the duty to defend – that Innovak now seeks Hanover to perform.[34]

**WHEREFORE**, based on the "four corners" of the Data Breach Class Action, the Policy's Insuring Agreement for Coverage B, and the Policy's Data Breach Form, Hanover respectfully requests that this Honorable Court deny Innovak's Motion for Partial Summary Judgment (Rec. Doc. 19), and grant Hanover's Cross-Motion for Final Summary Judgment, and enter summary judgment in its favor declaring that: (i) Hanover has no duty under the Policy to defend or indemnify Innovak against the Data Breach Class Action; and (ii) this insurance coverage action be dismissed, with prejudice, at Innovak's cost.

Dated this 30th day of March, 2017.

**PHELPS DUNBAR LLP**

*/s/ Mallory H. Thomas*
Patricia A. McLean, Esq., Fla. Bar No. 129143
mcleanp@phelps.com
Mallory H. Thomas, Esq., Fla. Bar No. 112212
thomasm@phelps.com
100 South Ashley Drive • Suite 1900
Tampa, Florida 33602-5311
Tel.: (813) 472-7550; Fax: (813) 472-7570
**Attorneys for Hanover Insurance Company**

---

[34] We note that although Innovak is not apparently seeking a defense under Coverage A of the Policy, there is no coverage allotted under Coverage A for the claims made in the Data Breach Class Action for the reasons set forth in Hanover's Cross-Motion for Summary Judgment.

PD.21228456.1

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 30, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Mallory H. Thomas_____
Attorney