**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**INNOVAK INTERNATIONAL, INC.,**

      **Plaintiff,**

**vs.**

                                   **CASE NO.: 8:16-cv-02453-MSS-JSS**

**THE HANOVER INSURANCE COMPANY,**

      **Defendant.**

_____/

**THE HANOVER INSURANCE COMPANY'S
DISPOSITIVE CROSS-MOTION FOR FINAL SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

      **COMES NOW,** through undersigned counsel, Defendant, The Hanover Insurance Company ("Hanover"), respectfully requests that this Honorable Court, pursuant to Federal Rule of Civil Procedure 56: (i) enter summary judgment in Hanover's favor; and (ii) dismiss this insurance coverage action with prejudice.  For the reasons set forth more fully below, it is clear as a matter of law that the subject commercial general liability policy issued by Hanover to Plaintiff, Innovak International, Inc. ("Innovak"), does not cover the claims and losses resulting from a cyberattack at Innovak.[1]

**I.      INTRODUCTION**

      Innovak is a South Carolina company that designs, develops, and sells accounting and payroll computer software systems to schools, school systems, and other state agencies in several states.  Innovak's internet portal stores an array of personally identifiable information, including social security numbers, addresses, telephone numbers, dates of births, employment information,

---

[1]      Hanover reserves all rights under the Policy and at law, including, but not limited to any and all defenses to this claim which exist but are not addressed in this Dispositive Cross-Motion for Final Summary Judgment.

and spousal information.  Innovak was the subject of a cyberattack, which allegedly resulted in a data breach and the theft of the personally identifiable information of numerous individuals employed by several different school districts in several different states.  While it is unclear from the pleadings when exactly the cyberattack occurred, Innovak apparently advised a news organization in April 2016 that a data breach had occurred.  Innovak did not report the matter to Hanover until May 13, 2016.

## A.    THE DATA BREACH CLASS ACTION AND NOTICE TO HANOVER

On April 18, 2016, Melissa Bohannan and nine other end users of Innovak's software (collectively, the "Underlying Plaintiffs") filed a class action on their own behalf and on behalf of other similarly situated end users against Innovak in the U.S. District Court for the Middle District of Alabama styled, *Melissa Bohannan v. Innovak International, Inc.*, Case No. 1:16-cv-272-WKW (the "Data Breach Class Action").[2]   The Underlying Plaintiffs filed the First Amended Class Action Complaint on January 17, 2017, which is now the operative complaint.[3] The Underlying Plaintiffs seek various forms of relief as a result of this cyberattack and resulting theft of personally identifiable information, which the Underlying Plaintiffs refer to as "Personal and Private Information" or "PPI."[4]

Hanover issued Policy No. ZH6A06623802 (the "Policy") to Innovak for the period August 1, 2015 to August 1, 2016.[5]   The Policy affords commercial general liability insurance subject to certain terms, conditions, limitations, exclusions and endorsements and was in effect in April 2016 when Innovak allegedly admitted to a news organization that a data breach had

---

[2]      Copies of the Class Action Complaint and First Amended Class Action Complaint filed in the Underlying Lawsuit are attached *in globo* as Exhibit "1."
[3]      *See* generally, Exhibit 1 (First Am. Comp.).
[4]      *Id.*
[5]      A true and correct copy of the Policy is attached hereto as Exhibit "2."  *See generally*, Ex. 2.

occurred.[6]  However, Innovak did not report the cyberattack to Hanover at that time, or earlier. Innovak was served with the Data Breach Class Action on May 12, 2016 and notified Hanover the next day of the data breach and suit.[7]

### B.   INNOVAK'S FILING OF THIS DECLARATORY ACTION

Innovak filed this insurance coverage action on July 21, 2016, in Florida state court, seeking a judicial declaration that Hanover has a duty to defend Innovak against the Data Breach Class Action.  The Complaint is silent, however, as to the provision under which a defense obligation is owed.[8]  Hanover previously disclaimed coverage to Innovak because the allegations contained in the Data Breach Class Action do not trigger coverage under the general liability insuring agreements in the Policy (Coverage A and Coverage B) and are expressly excluded under the Policy's Data Breach Coverage Form.  Hanover removed this action to this Honorable Court, filed responsive pleadings, and now files this dispositive cross-motion for summary judgment because it is clear as a matter of law that the commercial general liability policy Hanover issued to Innovak does not cover the claims asserted in the Data Breach Class Action. Hanover, therefore, has no duty to defend Innovak in the Data Breach Class Action.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   THE "FOUR CORNERS" OF THE DATA BREACH CLASS ACTION

1.     The Underlying Plaintiffs allege that Innovak has "known since at least 2014 that the information [PPI] could be at risk of theft if reasonable and adequate measures are not taken to protect this information."[9]

---

[6]     *See* Ex. 1 (First Am. Comp.) at ¶34.
[7]     Hanover's Agency Acknowledgement Form is attached as Exhibit "3."
[8]     *See generally* Rec. Doc. 2 (Comp.).
[9]     *See* Ex. 1 (First Am. Comp.) at ¶2.

2.      Innovak "was the subject of a data breach" when third-party hackers allegedly breached Innovak's software, database and/or portals and stole the Underlying Plaintiffs' PPI, "including but not limited to social security numbers, addresses, telephone numbers, dates of births, employment information, and/or spousal information…."[10]

3.      The Innovak cyberattack was the result of Innovak's alleged failure to "ensure that its software, database, and/or its cyber data storage systems were adequately protected" and the Underlying Plaintiffs' claim that Innovak "failed to timely disclose the data breach to end users of its software, database and/or portals."[11]

4.      In April 2016, Innovak allegedly "admitted to a news organization that" a data breach had occurred and the Underlying Plaintiffs claim that "Innovak did not have any security measures in place to encrypt or secure sensitive PPI which data was stored in its [Innovak's] software."[12]

5.      The Underlying Plaintiffs allege that, as a result of the Innovak data breach, they have suffered financial injuries, including "costs associated with the detection and prevention of additional identity theft, costs associated with time spent preventing future harms and loss of productivity associated with mitigating additional harm, stress, nuisance, loss of sleep, worry, and annoyance.[13]

6.      The Underlying Plaintiffs also claim that they "have suffered psychic injuries by learning that their PPI has been acquired by nefarious individuals with mal intent; fraudulent accounts opened in some of their names"; false and fraudulent social security returns/refunds filed in some of their names" and further claim that they "suffer from a real and immediate threat

---

[10]      *See* Ex. 1 (First Am. Comp.) at ¶1.
[11]      *See* Ex. 1 (First Am. Comp.) at ¶2.
[12]      *See* Ex. 1 (First Am. Comp.) at ¶¶34-37.
[13]      *See* Ex. 1 (First Am. Comp.) at ¶4.

of future harm related to Innovak's data breach." The Underlying Plaintiffs further claim that they have "suffered concrete and individualized psychic injuries, including but not limited to stress, nuisance, loss of sleep, worry and the annoyance of having to deal with the Innovak data breach."[14]

7.     The Underlying Plaintiffs assert five counts against Innovak: Count I for negligence, Count II for breach of implied contract, Count III for gross negligence, recklessness and/or wantonness, Count IV for unjust enrichment, and Count V for fraudulent suppression.

8.     In Count I for negligence, the Underlying Plaintiffs claim that Innovak breached duties care owed to its end users by failing to secure and protect their PPI.[15]

9.     As a result of Innovak's alleged negligence, the Underlying Plaintiffs seek recovery of compensatory damages "for the injuries and damages previously described, and set forth herein again by reference, plus any other damages, costs or fees available, including, but not limited to attorney's fees and costs"[16] for the injuries they claim to have suffered, including:

> theft of their PPI, which caused an immediate psychic injury that was concrete and individualized; cost associated with prevention of additional harm; costs associated with credit monitoring; costs associated with the additional prevention of identity theft; identity theft; loss of time to mitigate future harm; loss of time and money dealing with actual identity theft, the concrete and eminent threat of additional harms that are essentially certain to result, worry, stress, loss of sleep and severe emotional distress.[17]

10.     In Count II for breach of implied contract, the Underlying Plaintiffs allege that an implied contract was created to safeguard their PPI when Innovak received  it and that Innovak breached its implied contract(s) with the Underlying Plaintiffs "by failing to safeguard their PPI

---

[14]     *See* Ex. 1 (First Am. Comp.) at ¶4.
[15]     *See* Ex. 1 (First Am. Comp.) at ¶¶39-41.
[16]     *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶42.
[17]     *See* Ex. 1 (First Am. Comp.) at ¶42.

and by failing to notify the plaintiffs that their PPI was at risk, breached or otherwise compromised."[18]

11.    As a result of Innovak's alleged breach of implied contract(s), the Underlying Plaintiffs seek recovery of compensatory damages "for the injuries and damages previously described, and set forth herein again by reference, plus any other damages, costs or fees available, including, but not limited to attorney's fees and costs."[19]

12.    In Count III for gross negligence, recklessness and/or wantonness, the Underlying Plaintiffs allege that "Innovak's failure to provide adequate security" to protect PPI "was grossly negligent, reckless and/or wanton" and that Innovak "acted with conscious disregard to the safety of the [Underlying] Plaintiffs' PPI and the harm that was essentially certain to result if it failed to protect this highly sensitive and personal information."[20]

13.    As a result of Innovak's allegedly grossly negligent, reckless and/or wanton conduct, the Underlying Plaintiffs seek recovery of compensatory damages "for the injuries and damages previously described, and set forth herein again by reference, plus any other damages, costs or fees available, including, but not limited to attorney's fees and costs."[21]  Plaintiffs also seek punitive damages for this cause of action.[22]

14.    In Count IV for unjust enrichment, the Underlying Plaintiffs claim that they paid Innovak for its services and that some of that money was "supposed to be used by Innovak, in part, to provide adequate security measures to protect" their PPI and Innovak's failure to

---

[18]    *See* Ex. 1 (First Am. Comp.) at ¶¶44-48.
[19]    *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶48.
[20]    *See* Ex. 1 (First Am. Comp.) at ¶¶50-51.
[21]    *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶51.
[22]    *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶51.

PD.21228437.1

"provide reasonable security measures" resulted in unjust enrichment for Innovak to the detriment of the Underlying Plaintiffs.[23]

15.     As a result of Innovak's alleged unjust enrichment, the Underlying Plaintiffs seek "disgorgement of this unjust enrichment and full restitution of said monies" to the Underlying Plaintiffs, "plus any other damages, costs or fees available, including, but not limited to attorney's fees and costs."[24]

16.     In Count V for fraudulent suppression, the Underlying Plaintiffs claim that "Innovak knew or should have known that it had failed to adequately protect" their PPI and "fraudulently suppressed from the [Underlying] Plaintiffs the material fact that their PPI was at risk of being compromised" and that they suffered injury as a result of their detrimental reliance upon Innovak.[25]

17.     As a result of Innovak's alleged fraudulent suppression, the Underlying Plaintiffs seek recovery of compensatory damages "for the injuries and damages previously described, and set forth herein again by reference, plus any other damages, costs or fees available, including, but not limited to attorney's fees and costs."[26]  Plaintiffs also seek punitive damages for this cause of action.[27]

**B.     THE "FOUR CORNERS" OF THE POLICY**

18.     Hanover issued the Policy to Innovak for the period August 1, 2015 to August 1, 2016.[28]

19.     The Policy contains a Data Breach Form that provides as follows:

        THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

---

[23]     *See* Ex. 1 (First Am. Comp.) at ¶¶53-58.
[24]     *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶51.
[25]     *See* Ex. 1 (First Am. Comp.) at ¶¶60-64.
[26]     *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶64.
[27]     *See* Ex. 1 (First Am. Comp.) at "WHEREFORE" paragraph following ¶64.
[28]     *See generally*, Ex. 2.

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not covered.

SECTION A- COVERAGES

We will provide Data Breach Services, Data Breach Expense Coverages and Additional Expense Coverages as described below if you have a "data breach" that:

a.    Is discovered during the coverage period of this Data Breach Coverage Form; and

b.    Is reported to us within 30 days of your discovery of the "data breach".

1.    Data Breach Covered Services and Covered Expenses

\*\*\*

c.    Additional Expense Coverage

We will pay your reasonable and necessary expenses incurred for the following Additional Expense Coverages.  These expenses are subject to the limits of insurance described in Section C - Limits of Insurance.

(1)    Legal Services- Expenses incurred within the first six months following the discovery of a "data breach" for outside professional legal counsel review of the "data breach" and recommendations as to how you should best respond to it including final legal review of the proposed breach notification letter(s). However, we will not pay for expenses for legal counsel to review any third party liability litigation or notification of potential litigation.

\* \* \*

**SECTION B - EXCLUSIONS**

**1.    We will not cover the following regardless of cause:**

**d.    Defense or Legal Liability**

**Any fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages, lawsuit, administrative proceedings, or governmental investigation against or involving you.**[29]

**20.**    Coverage A – Bodily Injury and Property Damage Liability of the Policy provides, in pertinent part, as follows:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against

---

[29]    *See* Ex. 2 at Form 411-0669 (12/09)).

> any "suit" seeking those damages.  However, we will have no duty to defend the
> insured against any "suit" seeking damages for "bodily injury" or "property
> damage" to which this insurance does not apply . . . .[30]

**21.**     The Policy defines "Bodily Injury" to mean bodily injury, sickness or disease

sustained by a person including death resulting from any of these at any time.  "Bodily injury"

includes mental anguish or other mental injury resulting from "bodily injury."[31]

**22.**     The Policy defines "Property damage" as:

> a.  Physical injury to tangible property, including all resulting loss of use of that
> property.  All such loss of use shall be deemed to occur at the time of the
> physical injury that caused it; or
>
> b.  Loss of use of tangible property that is not physically injured.  All such loss of
> use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs
> stored as or on, created or used on, or transmitted to or from computer software,
> including systems and applications software, hard or floppy disks, CD-ROMs,
> tapes, drives, cells, data processing devices or any other media which are used
> with electronically controlled equipment.[32]

**23.**     Coverage B – Personal and Advertising Injury Liability of the Policy provides, in

pertinent part:

> COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1.     Insuring Agreement
>
> We will pay those sums that the insured becomes legally obligated to pay as damages
> because of "personal and advertising injury" to which this insurance applies.  We will
> have the right and duty to defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any "suit" seeking damages
> for "personal  and advertising injury" to which this insurance does not apply. . . .[33]

**24.**     The Policy defines "personal and advertising injury" in relevant part as "[o]ral or

written publication, in any manner, of material that violates a person's right of privacy."[34]

---

[30]     *See* Ex. 2 at Form CG 00 01 04 13).
[31]     *See* Ex. 2 at Form 421-2915 12 14.
[32]     *See* Ex. 2 at Form CG 00 01 04 13.
[33]     *See* Ex. 2 at Form CG 00 01 04 13.
[34]     *See* Ex. 2 at Form CG 00 01 04 13.

C.    ADMISSION OF BREACH AND NOTICE TO HANOVER

25.    On April 11, 2016, a news story aired in which Innovak admitted a data breach had occurred.[35]

26.    Innovak reported the Data Breach Class Action to Hanover on May 13, 2016.[36]

## III.   MEMORANDUM OF LAW

Although Innovak filed this insurance coverage action in Florida state court, it is a South Carolina company and the Policy was issued and delivered in South Carolina.[37]   Florida has "long adhered to the rule of *lex loci contractus*"[38] which "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage.[39]   Thus, South Carolina substantive law governs this contract-based insurance coverage dispute, and this motion considers South Carolina law.

As this Court is well aware, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40]   The nonmoving party (Innovak) "must do more than simply show that there is some metaphysical doubt as to the material facts."[41]   A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[42]   Because the above-quoted material

---

[35]    *See, e.g.*, a copy of an April 11, 2016 news article from Lamar County, Mississippi is attached as Exhibit "4." *See also*, http://www.wsmv.com/story/31693940/lamar-county-school-district-28-employees-personal-information-exposed-in-data-breach.

[36]    *See* Ex. 3.

[37]    *See* Rec. Doc. 2 (Comp.) & Ex. 2.

[38]    *State Farm Mut. Automobile Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).  The Florida Supreme Court has acknowledged that *lex loci contractus* is "an inflexible rule" that "is necessary to ensure the stability in contract arrangements." *Roach*, 945 So. 2d at 1164 (noting that a party should not be able to change or modify the contract by moving to another state).

[39]    *Id.*; *see also Sturiano v. Brooks*, 523 So. 2d 1126 (Fla. 1988); *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293 (Fla. 1988).

[40]    Fed. R. Civ. P. 56(a).

[41]    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[42]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

facts are indisputable, Innovak cannot show that there is a genuine issue of material fact and Hanover is therefore entitled to judgment as a matter of law.

Hanover seeks a declaration that it has no duty under the Policy to defend or indemnify Innovak against the Data Beach Class Action.   The question of whether an insurer has a duty to defend is a legal question that the Court can decide via summary judgment.[43]   For purposes of making this determination, South Carolina courts have consistently held that "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the [underlying] complaint."[44]   When the facts alleged in the underlying complaint "fail to bring the case within policy coverage, the insurer is free of the obligation to defend."[45]   An insurer therefore has no duty to defend an insured against a complaint that does not allege facts within coverage under the policy.[46]   Based on the undisputed facts above and the legal argument below, Hanover has no duty under the Policy to defend or indemnify Innovak against the Data Beach Class Action.[47]

## A.   THE FIRST-PARTY DATA BREACH COVERAGE FORM

The Data Breach Class Action results from the Innovak data breach.   The Policy contains a Data Breach Coverage Form, which is the only portion of the Policy that specifically addresses the duties and obligations of the parties in the event of a cyberattack and resulting data breach

---

[43]   *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 387-88 (4th Cir. 2001) ; *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, 282 S.E. 2d 856, 857 (S.C. 1981).

[44]   *Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC*, 763 F.Supp.2d 769, 776 (D.S.C. 2011) (quoting *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009).  *See also, Ellett Bros., Inc. v. U.S. Fid. & Guar. Co*., 275 F.3d 384, 387-88 (4th Cir. 2001) ; *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, 282 S.E. 2d 856, 857 (S.C. 1981).  Although the general rule in South Carolina has been to look only to the allegations in the complaint when determining a duty to defend, there is a line of South Carolina cases that suggest that an insurer's duty to defend may also be determined by facts outside of the complaint.  *See USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 797 (S.C. 2008); *City of Hartsville v. S.C. Mua. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (quoting *Clegg*, 661 S.E.2d at 798).  This exception to the general rule is immaterial here as there is no extrinsic evidence that would tend to have an effect on this duty to defend determination.

[45]   *R.A. Earnhardt*, 282 S.E. 2d at 857

[46]   *Shelby Mut. Ins. Co. v. Askins*, 413 S.E. 2d 855, 859 (S.C. Ct. App. 1992).

[47]   If an insurer has no duty to defend, it will know that it has no duty to indemnify. *See Allstate Indem. Co. v. Tilmon*, No. 1:13–00690–JMC, 2014 WL 1154666, at *5 (D.S.C. Mar.21, 2014).

- 11 -

lawsuit.  In the instant case, the Data Breach Coverage Form does not provide coverage for two reasons:  (i) Innovak failed to comply with the conditions precedent to coverage; and (ii) Innovak filed this suit seeking only that Hanover provide a defense against the Data Breach Class Action, and the Data Breach Coverage Form, which affords first-party coverage, expressly excludes fees, costs, settlements, and judgments related to a claim or lawsuit resulting from a data breach.

### *Innovak Failed to Comply with Conditions Precedent to Data Breach Coverage*

For coverage to attach under the Data Breach Coverage Form, the "data breach"[48] must be: (i) discovered during the Policy effective dates of August 1, 2015 to August 1, 2016; and (ii) reported to Hanover within 30 days of Innovak's discovery of the data breach.  It is unclear from the pleadings when Innovak discovered the subject cyberattack or resulting data breach.  At least one news story aired on April 11, 2016;[49] thus, Innovak must have discovered the data breach on or before April 11, 2016.  However, Innovak did not report the data breach to Hanover until May 13, 2016 − 32 days later.[50]  Accordingly, Hanover seeks a judicial declaration that the coverages afforded under the Data Breach Coverage Form are not triggered because Innovak failed to timely report the data breach to Hanover within 30 days of discovery as required.

---

[48]     "Data breach" means the "loss, theft, accidental release or accidental publication of private personal data entrusted to you as respects one or more potentially identified persons" if such loss, theft, accidental release or accidental publication has or could reasonably result in the fraudulent use of such information.  This definition of "data breach" is subject to the following provisions:

a. "Data breach" includes disposal or abandonment of "private personal data" without appropriate safeguards such as shredding or distraction, subject to the following provisions:

   (1) your failure to use appropriate safeguards must be accidental and not intentional reckless or deliberate and not in violation of your due diligence obligations under paragraph 2. Additional Conditions, paragraph a; and

   (2) such disposal or abandonment must take place during the time period for which this "data breach" coverage form is effective.

b. "Data breach" includes situations where there is a reasonable cost to suspect that such "private personal data" has been lost stolen, accidentally released or accidentally published, even if there is no firm proof.

c. All incidents of "data breach" that are discovered at the same time or rise from the same cause or from a series of some of the causes would be considered one "data breach." All theft of "private personal data" caused by any person or in which the person is involved, whether the result of a single act or series of related acts, is considered a single incident of "data breach."  *See* Ex. 2 at Form 411-0669 (12/09)).

[49]     *See, e.g.*, Ex. 4. *See also*, http://www.wsmv.com/story/31693940/lamar-county-school-district-28-employees-personal-information-exposed-in-data-breach.

[50]     *See* Ex. 3.

***The Data Breach Coverage Form Does Not Impose a Defense Obligation and Expressly Excludes Defense Costs Arising From a Data Breach***

The Data Breach Coverage Form provides first-party indemnity coverage to Innovak in the event of a data breach, including, for example, payment for legal counsel to advise on how to respond to the data breach, coverage for notification costs to third parties, coverage for a help line for affected third parties, and other costs typically associated with a data breach event.[51] Even if Innovak had complied with the conditions precedent to coverage (which it did not), Hanover would still have no obligation to provide a defense because the Data Breach Form unequivocally states that "[a]ny fees, costs, settlements, judgments, or liability of any kind arising in the course of, or as a result of a claim for damages [or] lawsuit" are <u>not</u> covered.

In an unpublished decision from the case entitled *Camp's Grocery, Inc. v. State Farm and Cas. Co.*, No. 4:16-cv-00204-JEO (N.D. Ala. Oct. 25, 2015), an Alabama federal court considered whether a grocery store that suffered a cyberattack was entitled to coverage under a business owners policy.[52] Like Innovak, the insured grocery store argued that its non-cyber policy covered that cyber loss; however, the *Camp's Grocery* court disagreed. The Inland Marine Computer Property Form at issue there provided only first-party coverage and did not impose a duty on the insurer to defend or indemnify the insured against the claims arising out of a data breach. The *Camp's Grocery* court therefore entered summary judgment in favor of the insurer finding no duty to defend or indemnify.[53]

---

[51]    *See* Ex. 2 at Data Breach Form 411-0669 (12/09).

[52]    A copy of the Memorandum Opinion from *Camp's Grocery* is attached as Exhibit "5." Given the scarcity of law on cyber cases across the nation, Hanover provides the Court with a copy of *Camp's Grocery* as an example of what another court has done in this developing area of law that remains in infancy.

[53]    *See generally*, Ex. 5 at pp. 17-18.

Here, the Data Breach Coverage Form, a first-party form, not only fails to impose a duty on Hanover to defend and/or indemnify Innovak, it expressly excludes such obligations.[54]   South Carolina courts have consistently stated that insurance policies may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business.[55]   Innovak is asking the Court to ignore the only specific portion of the Policy that addresses claims and  lawsuits arising from a data breach because Innovak knows the Policy addresses and denies the very relief that it is asking the Court to grant.

Accordingly, based on the "four corners" of the Data Breach Class Action and the Policy's Data Breach Coverage Form, Hanover respectfully requests that this Honorable Court enter judgment that the Policy's Data Breach Coverage Form specifically excludes coverage for defense and indemnity for the claims asserted in the Data Breach Class Action and that Hanover, therefore, has no duty under the Policy's Data Breach Coverage Form to defend or indemnify Innovak.

## B.     NO COVERAGE UNDER COVERAGE A—NO PROPERTY DAMAGE OR BODILY INJURY

In an effort to ignore the plain language of the Data Breach Coverage Form, Innovak claims that the "allegations propounded against Innovak in the [Data Breach Class Action] fall within the coverage of parts A and B in the Policy."[56]   Innovak's contention is misplaced.   For coverage to attach under the Policy's Coverage A - Bodily Injury and Property Damage Liability Coverage Part, the insured, *i.e.*, Innovak, must be sued for damages for "bodily injury" or "property damage" caused by an "occurrence."[57]   The Underlying Plaintiffs claim electronic and

---

[54]     *See* Ex. 2 at Data Breach Form 411-0669 (12/09).

[55]     *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E. 2d 327, 330 (S.C. 1999) (*quoting* Couch on Insurance 3d, § 130:14 (1997)).

[56]     *See* Rec. Doc. 2 (Comp.) at ¶10.   Innovak does not, however, seek coverage under Coverage A in its motion for partial summary judgment, Rec. Doc. 19.

[57]     *See* Ex. 2 at Coverage A, Insuring Agreement.

- 14 -

economic losses as well as "psychic injuries," none of which meet the Policy's definitions of "bodily injury" or "property damage."  Thus, Innovak cannot carry its burden of proving[58] that the Insuring Agreement for Coverage A is triggered by the Data Breach Class Action.

### Stolen PPI Is Not "Property Damage"

The Underlying Plaintiffs claim that third-party hackers breached Innovak's software, database and/or portals and stole their PPI, "including but not limited to social security numbers, addresses, telephone numbers, dates of births, employment information, and/or spousal information…."[59]  This stolen information is not "property damage."  It is electronic data, and electronic data is expressly excluded from the Policy's "property damage" definition because "electronic data is not tangible property."[60]  While no South Carolina court has address this exact wording, in *Liberty Corporate Capital Ltd. v. Security Safe Outlet, Inc.*, a federal court applying Kentucky law considered an identical provision and held that "the terms of the policy clearly and unequivocally exclude 'electronic data' . . . from the definition of 'tangible property.'"[61]  The rationale of the *Security Safe* case is consistent with the general rules of construction in South Carolina.[62]  Here, Hanover clearly limited its exposure to tangible property and the unambiguous

---

[58]     As the person seeking coverage, "[t]he burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract."  *Sunex Intern., Inc. v. Travelers Indem. Co. of Ill.*, 185 F. Supp. 2d 614, 617 (2001) (quoting *Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968)).

[59]     *See* Ex. 1 (First Am. Comp.)  at ¶1.

[60]     *See* Ex. 2 at Form CG 00 01 04 13.

[61]     *Liberty Corp. Capital Ltd. v. Security Safe Outlet, Inc.*, 937 F. Supp. 2d 891, 901 (E. D. Ky. 2013).  *See also*, *State Auto Property & Cas. Ins. Co. v. Midwest Computers & More*, 147 Supp. 2d 1113 (W.D. Okla. 2001) (applying Oklahoma law) (ruling that data is not tangible property since computer data has no physical substance and only the medium which holds data can be touched, held, or sensed by the human mind); *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir. 1994) (applying Pennsylvania and Wisconsin law) (holding that, where value in anchoring system design is in the idea, not the medium that memorializes it, loss in value of the design represents loss in the value of an idea and not a loss of use of tangible property); *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 7 Cal. Rpt. 3d 844 (Cal. Ct. App. 2003) (ruling loss of stored computer data is not "direct physical loss").

[62]     South Carolina courts "must enforce, not write, contracts of insurance," and "must give the policy language its plain, ordinary, and popular meaning."  *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E. 2d 820, 823 (S.C. Ct. App. 1999) (*citing Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E. 2d 524 (S.C. Ct. App. 1996))(*citing Fritz–Pontiac–Cadillac–Buick v. Goforth*, 440 S.E. 2d 367 (S.C. 1994)).

PD.21228437.1

wording of the Policy excludes any alleged theft of or damage to electronic data from its definition of "property damage."

### Economic Loss Is Not "Property Damage"

The Underlying Plaintiffs claim that they have suffered financial injuries, including "costs associated with the detection and prevention of additional identity theft, costs associated with time spent preventing future harms and loss of productivity associated with mitigating additional harm, stress, nuisance, loss of sleep, worry, and annoyance.[63]  These costs are not "property damage" because they do not involve damage to tangible property.  Accordingly, consistent with South Carolina law on this issue,[64] the Underlying Plaintiffs' claims for economic losses as a result of the data breach do not constitute "property damage" as that term is defined in the Policy.

### "Psychic Injuries" Resulting from a Data Breach Are Not "Bodily Injury"

The Underlying Plaintiffs claim that they "have suffered psychic injuries by learning that their PPI has been acquired by nefarious individuals with mal intent" as well as "stress, nuisance, loss of sleep, worry and the annoyance of having to deal with the Innovak data breach."[65]  These claimed psychic injuries are not "bodily injury," which the Policy defines as "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.  'Bodily injury' includes mental anguish or other mental injury resulting from 'bodily injury.'"[66]

---

[63]       *See* Ex. 1 (First Am. Comp.)  at ¶4.

[64]       "CGL coverage 'is for tort liability for injury to persons and damage to other property and not for contractual liability of the insured for economic loss because the completed work is not that for which the damage person bargained."  *Bennet & Bennet Const., Inc. v. Auto Owners Ins. Co.*, 405 S.C. 1, 8–9, 747 S.E.2d 426, 430 (2013) (quoting *Century Indem. Co v. Golden Hills Builders, Inc.*, 348 S.C. 559, 565–66, 561 S.E.2d 355, 258 (2002), overruled in part on other grounds by *Crossman Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 717 S.E.2d 589 (2011)).  The South Carolina Supreme Court has also held, for example, that a CGL policy is not intended to cover economic loss resulting from faulty workmanship.  *Century Indem. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 563–64, 561 S.E.2d 355, 357 (2002).

[65]       *See* Ex. 1 (First Am. Comp.)  at ¶4.

[66]       *See* Ex. 2 at Form 421-2915 12 14.

- 16 -

Clearly, psychic injury **resulting from** the Innovak data breach—as alleged by the Underlying Plaintiffs—is not a mental injury **resulting from** "sickness or disease sustained by a person including death" as is required by the Policy's definition of "bodily injury."

Several courts applying South Carolina law have consistently recognized the distinction between purely psychic injury and "bodily injury" as that term is defined in a commercial liability policy.   For example, in *Jefferson-Pilot Fire & Casualty Co. v. Sunbelt Beer Distributers, Inc.*, a federal court applying South Carolina law addressed whether a claimant's alleged mental anguish and humiliation which allegedly resulted from racial discrimination and unequal pay claims against the claimant's former employer was covered bodily injury under a commercial liability policy which defined that term as "bodily injury, sickness or disease sustained by a person, including death resulting from these at any time."[67] There, the underlying complaint contained no allegations of personal physical damage and the *Jefferson-Pilot* court was "not prepared to extend the interpretation of 'bodily injury' to include purely emotional damage absent some objective indication of physical symptoms."[68]  The *Jefferson-Pilot* court therefore held that the claimant's allegations of mental anguish and humiliation were not covered under the policy at issue there.[69]

Similarly, in *Home Insurance Co. v. Hartford Fire Insurance Co.*, a federal court applying South Carolina law addressed whether a claim for mental anguish allegedly resulting from an employer's reassignment of the claimant's sales accounts to another sales agent fell within a policy's definition of bodily injury which, as the Policy here does, included "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting

---

[67]     *Jefferson-Pilot Fire & Casualty Co. v. Sunbelt Beer Distributers, Inc.*, 839 F. Supp. 376 (D.S.C. 1993).
[68]     *Id.* at 379.
[69]     *Id.*

- 17 -

from any of these."[70]   The *Home Insurance* court noted:   "It is abundantly clear that the defendants' policies provide coverage for mental anguish only if the mental anguish results from bodily injury, sickness or disease."[71]   Because the alleged mental anguish at issue there was wholly unrelated to bodily injury, sickness, or disease, the *Home Insurance* court concluded there was no coverage for the mental anguish claim under the commercial liability policy.[72]

Here, the Underlying Plaintiffs claim that their alleged "psychic injuries" resulted from the Innovak data breach.  They did not result from "'bodily injury', sickness or disease sustained by a person including death" as is required to trigger coverage and, thus, a duty to defend.  As with the claimants in the *Jefferson-Pilot* and *Home Insurance* cases discussed above, the Underlying Plaintiffs' mental anguish claims are unrelated to any "bodily injury." Therefore, the "psychic injuries" alleged in the Data Breach Class Action do not fall within the Policy's definition of "bodily injury" such as to trigger coverage and a duty to defend.

Based on the "four corners" of the Data Breach Class Action and the Policy's Coverage A insuring agreement, Hanover respectfully requests that this Honorable Court enter judgment that Hanover has no duty to defend or indemnify Innovak under Coverage A.

## C.   NO COVERAGE UNDER COVERAGE B—NO PERSONAL OR ADVERTISING INJURY

Similarly, Innovak's contention that the allegations of the Data Breach Class Action trigger Coverage B of the general liability portion of the Policy is equally misplaced.

### *There Was No Publication As Required Under Coverage B*

For coverage to attach under the Policy's Coverage B - Personal and Advertising Injury Coverage Part, the insured, *i.e.*, Innovak, must be sued for damages for "personal and advertising

---

[70]   *Home Ins. Co. v. Hartford Fire Ins. Co.*, 379 F. Supp. 2d 1282 (M.D. Ala. 2005).
[71]   *Id.* at 1289.
[72]   *Id.*

injury", a term which is defined in part as "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."[73]

Courts, including the Eleventh Circuit, recognize that the term "publication" in Coverage B, although not defined in the Policy, means "communication (as of news or information) to the public: public announcement" or "the act or process of issuing copies ... for general distribution to the public."[74]  The phrase "in any manner" merely "expands the categories of publication (such as email, handwritten letters, and, perhaps, 'blast-faxes') covered by the policy."[75]  Here, the Innovak data breach does not involve a public dissemination of the Underlying Plaintiffs' PPI, as the plain meaning of the term publication requires.  Rather, the allegations are that Innovak's failure to provide the proper cybersecurity allowed one or more nefarious hackers to appropriate or steal the subject PPI.[76]  Failure to prevent an appropriation of information is not synonymous with publication.[77]  Simply put, because the Underlying Plaintiffs allege appropriation of their PPI by hackers—not public dissemination of it—the First Amended Class Action Complaint does not allege an intentional act of publication as required under Coverage B.

### *Coverage B Requires a Publication by Innovak*

Even assuming *arguendo*, that there has been a publication (which is denied), the First Amended Class Action Complaint does not allege a publication by Innovak.  While no South

---

[73]  *See* Ex. 2 at Coverage B, Insuring Agreement.

[74]  *Creative Hospital Ventures, Inc. v. U. S. Liability Ins. Co.*, 444 F. App'x 370, 375–76 (11th Cir. 2011) (quoting *Penzer v. Transportation Ins. Co.*, 29 So. 3d 1000, 1005–1006 (Fla. 2010)).  "Publication occurs when information is 'placed before the public,' not when a member of the public reads the information placed before it." *Travelers Indem. Co. of Am. v. Portal Healthcare Sols.*, LLC, 35 F. Supp. 3d 765, 771 (E.D. Va. 2014), *aff'd sub nom. Travelers Indem. Co. of Am. v. Portal Healthcare Sols., L.L.C.*, 644 F. App'x 245 (4th Cir. 2016).  *See also Whole Enchilada, Inc. v. Travelers Prop. Cas. Co.*, 581 F. Supp. 2d 677, 696-97 (W.D. Pa. 2008); *Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 656, 572 (Mass. 2007).

[75]  *Creative Hospital Ventures*, 444 F. App'x at 376.

[76]  *See* Ex. 1 (First Am. Comp.) at ¶¶1-2.

[77]  *See Recall Total Information Management, Inc. v. Federal Ins. Co.*, 147 Conn. App. 450, 83 A.3d 664 (2014), *aff'd*, 317 Conn. 46, 115 A.3d 458 (2015) (finding the failure to secure information did not constitute "other publication" for purposes of personal and advertising injury); *Regents of Univ. of California v. Superior Court,* 220 Cal. App. 4th 549, 163 Cal. Rptr. 3d 205 (2013), as modified on denial of reh'g (Nov. 13, 2013) (finding the theft of a hard drive containing confidential medical information was not a "release" of the patient's information).

Carolina courts have had the opportunity to address the publication issue in the context of a data breach, other courts have held under similar facts that, for "personal and advertising injury" coverage to be implicated, the subject publication must be made by the insured.  For example, in *Zurich American Insurance Co. v. Sony Corp. of America*, a New York court considered whether an insurer had a duty to defend or indemnify its insured against a data breach claim involving a third-party hacking into the insured's software.[78]  The core issue in the *Sony* case was whether accessing the claimants' information by the third-party hackers constituted a publication of material violating the claimants' right to privacy as necessary to trigger the policy's "personal and advertising" coverage.[79]  Even though the policy did not expressly require publication by the insured, the *Sony* court held that the policy clearly did not cover publication by third parties.[80] The *Sony* court noted that interpreting the "personal and advertising" definition to include acts by third parties would amount to an expansion of coverage not bargained for by the insurer.[81]

Other courts addressing whether a third party's actions trigger coverage for "personal and advertising injury" have similarly held that "personal and advertising injury" requires affirmative actions by the insured.[82]  In *Butts v. Royal Vendors Inc.*, the court found that publication by a third party did not trigger personal and advertising injury coverage because the insured must commit the affirmative act of publication.[83]  Additionally, in *Miken Sales, Inc. v. Diamond State Ins. Co.*, the court found that an insured must engage in specific actions under the "personal and

---

[78]    *Zurich American Insurance Co. v. Sony Corp. of America*, No. 651982/2011, 2014 WL 8382554 (N.Y. Sup. Feb. 21, 2014).

[79]    *Id.* at 7-17.

[80]    *Id.* at 34-37.

[81]    *Id.*

[82]    *See Butts v. Royal Vendors Inc.*, 504 S.E. 2d 911 (W.Va. 1998); *Miken Sales, Inc. v. Diamond State Ins. Co.*, 2007 LEXIS 7422 (C.D. Cal. Apr. 19, 2007).  *See also*, *Camp's Grocery* (Ex. 5) at footnote 5 on p. 14 of the Memorandum Opinion wherein the court noted *in dicta* that if the insured grocery store had not abandoned its argument under Coverage B, the court would have found that "the underlying action does not allege … 'personal or advertising injury' for the reasons stated in State Farm's [the insurer's] brief" that there was no publication by the insured grocery store.

[83]    *Butts*, 504 S.E. 2d at 917.

advertising injury" policy definition and not merely enable a third party's actions to trigger coverage.[84]

The outcomes in *Sony*, *Butts*, and *Miken Sales* are consistent with South Carolina law, which requires courts to interpret policies as a whole and give the language its plain and ordinary meaning.[85]  Reading Coverage B's insuring agreement together with the "right to privacy" prong of  the definition of "personal and advertising injury" instructs that Hanover agreed to "pay those sums that [Innovak] becomes legally obligated to pay as damages because of… publication … of material that violates a person's right to privacy." The only reasonable construction of this language is that Coverage B applies to offenses committed by the insured, *i.e.*, by Innovak. After all, Hanover agreed to insure Innovak against the offenses covered by the Policy and construing the Policy to afford coverage here would unreasonably extend coverage for the intentionally tortious actions of unknown third parties.[86]   Thus, the foregoing case law establishes that publication of the Underlying Plaintiffs' information by third-party hackers does not fall within the Policy's definition of "personal and advertising injury."  Given that there was no alleged publication by Innovak, the claims made and damages sought in the Data Breach Class Action do not trigger Coverage B.

### *Coverage B Applies Only to Intentional Acts by the Insured*

Unlike Coverage A, which provides coverage based on the harm suffered, Coverage B applies to the specific offenses enumerated in the Policy. A review of those covered offenses, including the invasion of privacy offense at issue here, reveals that they all require an affirmative

---

[84]     *Miken Sales*, 2007 LEXIS 7422 at *9.
[85]     *Canal Ins. Co. v. Nat'l House Movers, LLC*, 777 S.E. 2d 418, 421 (S.C. Ct. App. 2015).
[86]     "[I]f the intention of the parties is clear, courts should not torture the meaning of policy language to extend or defeat coverage that was never intended by the parties."  MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency, 520 S.E. 2d 820, 823 (S.C. Ct. App. 1999) (citing Nationwide Mut. Ins. Co. v. Commercial Bank, 479 S.E. 2d 524 (S.C. Ct. App. 1996)).

PD.21228437.1

act by the insured.  Consequently, numerous courts have recognized that personal injury coverage applies only to an insured's intentional conduct.[87]  Indeed, the Supreme Court of South Carolina has noted that personal injury coverage insures against "intentional torts."[88] Thus, for Hanover's duty to defend to arise under Coverage B, the Data Breach Class Action must allege that Innovak intentionally violated the plaintiff's privacy, which it does not. Rather, the Underlying Plaintiffs allege, at most, that Innovak failed to safeguard their information or disregarded the hacking risk—conduct that falls short of intentional. Since the First Amended Class Action Complaint does not allege that Innovak intentionally disclosed the Underlying Plaintiffs' PPI, the First Amended Class Action Complaint does not allege a potentially covered claim for violation of the right to privacy and, consequently, Hanover has no duty to defend.[89]

Based on the "four corners" of the Data Breach Class Action and the Policy's Coverage B insuring agreement, Hanover respectfully requests that this Honorable Court enter judgment that Hanover has no duty to defend or indemnify Innovak under Coverage B. [90]

---

[87]  *See, e.g., Cnty. of Columbia v. Cont'l Ins. Co.*, 634 N.E..2d 946, 950 (N.Y. 1994) ("[C]overage under the personal injury … provision … was intended to reach only purposeful acts undertaken by the insured or its agents."); *Gregory v. Tenn. Gas Pipeline Co.*, 948 F.2d 203, 209 (5th Cir. 1991) (personal injury coverage "requires active, intentional conduct by the insured"); *Harrow Prods. v Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1025 (6th Cir 1995) (holding that each enumerated offense in Coverage B requires an intentional act); *Stonelight Tile v Cal. Ins. Guar. Ass'n*, 58 Cal. Rptr. 3d 74, 89 (Cal. Ct. App. 2007) (noting that Coverage B offenses are based on intentional conduct and not accidental conduct).

[88]  *See, e.g., S.C. State Budget & Control Bd. v. Prince*, 304 S.C. 241, 403 S.E.2d 643, 647 (S.C.1991) (noting that "the policy purports to provide coverage for certain intentional torts under the policy's definition of covered personal injuries….").

[89]  Alabama law governs the Data Breach Class Action. In Alabama, a viable claim for invasion of privacy requires that the defendant act intentionally, which likely explains why the Data Breach Class Action does not plead an invasion of privacy claim. *See, e.g. Burton v. MAPCO Express, Inc.*, 47 F. Supp. 3d 1279, 1288 (N.D. Ala. 2014) (holding in a data breach case that the plaintiffs' invasion of privacy claim failed because "[u]nder Alabama law, invasion of privacy is an intentional tort" and the complaint did not allege "an intentional act of divulging … confidential information."); *Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 737 (Ala. 2001) (quoting *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala.1995).

[90]  Coverage B is subject to a Breach of Contract exclusion (paragraph f.) which applies to further bar coverage for any alleged "personal and advertising injury" arising out of any breach of contract, i.e., Count II—Breach of Implied Contract.  See Ex. 2. at Coverage B Breach of Contract exclusion (paragraph f.).  Hanover reserves the right to fully brief this issue at a later date in the event this dispositive motion is denied.

## IV.    CONCLUSION

The Hanover Policy specifically addresses the duties and obligations of the parties in the event of claims and/or a lawsuit arising from a data breach.  The Policy expressly excludes the very duty – the duty to defend – that Plaintiff now seeks Hanover to perform.  Based on the unambiguous Policy language, the allegations against Innovak in the Data Breach Class Action, and the prevailing case law, the Policy does not provide coverage for the claims and damages alleged against Innovak.  Accordingly, Hanover has no duty to defend or indemnify Innovak in the Data Breach Class Action.

**WHEREFORE**, Hanover respectfully requests, for the reasons set forth above, that this Honorable Court enter summary judgment in its favor, pursuant to Fed. R. Civ. P. 56, declaring that: (i) Hanover has no duty under the Policy to defend or indemnify Innovak against the Data Breach Class Action; and (ii) this insurance coverage action be dismissed, with prejudice, at Innovak's cost.

Dated this 30th day of March, 2017.

**PHELPS DUNBAR LLP**

*/s/ Mallory H. Thomas*
Patricia A. McLean, Esq., Fla. Bar No. 129143
mcleanp@phelps.com
Mallory H. Thomas, Esq., Fla. Bar No. 112212
thomasm@phelps.com
100 South Ashley Drive • Suite 1900
Tampa, Florida 33602-5311
Tel.: (813) 472-7550; Fax: (813) 472-7570
**Attorneys for The Hanover Insurance Company**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 30, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Mallory H. Thomas_____*
Attorney
