UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| INNOVAK INTERNATIONAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.:8:16-cv-02453-MSS-JSS |
| | ) |
| THE HANOVER INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

### I.   PRELIMINARY STATEMENT

Plaintiff, Innovak International, Inc. ("Innovak"), has moved for entry of a partial summary judgment declaring that Defendant, Hanover Insurance Company ("Hanover"), has a duty to defend it in the underlying proceedings, *Melissa Bohannan, individually and on behalf of a similarly situated class v. Innovak International, Inc.,* Case No. 1:16-cv-272-WKW, pending in the Middle District of Alabama ("Lawsuit"). [DKT 19]  Herein, the plaintiffs in the Lawsuit are referred to as "Plaintiffs."

The Hanover Insurance Company has filed a dispositive cross motion for final summary judgment seeking an Order declaring that it has no duty to defend under the subject Policy.[1] [DKT 21] Pages 11 through 18 of Hanover's motion address the existence of

---

[1] The parties agree that the subject policy of insurance bears policy number ZH6A066238 02 effective between August 1, 2015, and August 1, 2016, and agree upon the language which is contained within the policy.  In this Response reference to this subject Policy will be to the "Policy."

coverage under a "Data Breach" endorsement and coverage under Part A of the Commercial General Liability Policy. Innovak makes no contention that there is coverage under these portions of the Policy. Instead, Innovak is entitled to a defense under the Policy pursuant to the language contained in Part B of the Commercial General Liability coverage form that provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. (Dkt. 2, Exhibit A, 7 of 17).

Paragraph 14 of Section V of the of the commercial general liability form ("GCL")(Dkt. 2, Exhibit A, page 16 of 17) states:

> "Personal and advertising injury" means injury,. . . arising out of one or more of the following offenses:
>
> . . . .
>
> e. Oral or written publication, **_in any manner_**, of material that violates a person's right to privacy. (emphasis supplied)

The ultimate decision of this Court should be that Innovak is entitled to a defense in the Lawsuit and that Hanover's motion must be denied.

## II.   STANDARD OF REVIEW AND CHOICE OF LAW

The parties agree that the law of South Carolina governs the interpretation of the insurance contract.   They also agree

that the manner in which the duty to defend is determined is by an analysis of whether any allegations of the underlying complaint are potentially covered by the language in the subject policy. If any one set of allegations is covered, Hanover has to defend the entire Lawsuit. *Isle of Palms Pest Control Co. v. Montecello Ins. Co.*, 459 S.E.2d 318 at 319 (S.C. Ct. App. 1994).

As noted in Innovak's pending motion for partial summary judgment, [DKT 19, page 12], South Carolina law requires that Hanover must state all of its bases for denying coverage in its communications with the insured. *Harleysville Group Insurance v. Heritage Communities, Inc.*, 2017 S.C. LEXIS 8 (S.C. January 11, 2017). A copy of this decision is located at [DKT. 19, Exhibit 1, pages 58-75.] Innovak was entitled to know what the coverage issues would be raised by Hanover before it decided to pursue this suit for declaration and is not required to imagine whether Hanover would dream up new coverage defenses or prepare for a complete reversal of its position after this action was filed. Pages 18-19 of Hanover's motion contend that there is no coverage because the allegations in the underlying complaint do not allege that the Underlying Plaintiffs PPI was "published" by Innovak. [DKT 21, pages 18-19] Hanover contends in pages 21 through 23 that coverage is available to Innovak if it intentionally published the Plaintiffs' PPI. [DKT 21-23].

Neither of these contentions was made in Hanover's denial letter and cannot be considered by this Court.

### III. ARGUMENT

#### A. Consideration of Issues not raised in Hanover's denial letter is not allowed under South Carolina Law

The *Harleysville Group Insurance* case dealt with an insufficient "reservation of rights" letter. Harleysville defended its insureds after delivering a "reservation of rights" letter with the intention of disputing coverage if adverse verdicts were entered against them. Judgments were entered against Harleysville's insureds. Harleysville then filed a suit for declaration of rights, intending to avoid paying the judgments. The Court held that a generic reservation of rights letter that simply cut and pasted portions of the policy verbatim did not provide the insurer with a basis for a subsequent denial of coverage. [DKT. 19-1 page 65] The basis for this ruling is that an insured must be notified of the insurer's coverage opinion so that it can accurately evaluate its position. [DKT 19-1, page 64 of 75] Innovak had the same right before filing this action without having to guess what claims Hanover might fabricate in a declaratory judgment action.

In this action, Hanover cut and pasted the language of the policy in Part B of the Comprehensive General Liability form including the language of exclusions for "Knowing violation of

Rights of Another," "Criminal Act," "Contractual Liability," Breach of Contract," and "Distribution of Materials in Violation of Statutes." Under *Prince,* this generic cut and pasted language is insufficient. [DKT 2, Exhibit C, page 5 of 10] However, Hanover's denial letter also stated:

> Coverage B does not apply to the Plaintiffs' claims because it necessarily requires an act or conduct by the Insured for coverage to be present. Here, third-party hackers, not the Insured caused the data breach. Additionally, the exclusions set forth above preclude coverage for the Plaintiffs' claims. Thus, Hanover's duty to defend is not triggered. [DKT 2, Exhibit C, page 8 of 10]

Pages 18-19 of Hanover's motion contend that there is no coverage because the allegations in the underlying complaint do not allege that the Underlying Plaintiffs PPI was "published" by Innovak. [DKT 21, pages 18-19] Hanover contends in pages 21 through 23 that coverage is available to Innovak only if it intentionally published the Plaintiffs' PPI. [DKT 21-23.] Neither of these contentions was made in Hanover's denial letter. In fact, its cut and pasted reference to the exclusion for the "Knowing Violation of the Rights of Another" implies that Hanover wanted to deny on the theory that Innovak acted intentionally. Now it is arguing a position that contradicts its denial letter.[2]

---

[2] Hanover's sixth affirmative defense also disclaims coverage on account of a "knowing violation of rights of another." [DKT 3, page 6]

Innovak referred to the *Harleysville* decision in its motion for partial summary judgment. [DKT 19, page 7 of 17]. Neither Hanover's response to Innovak's motion nor its motion for final summary judgment makes any reference to this decision or offers any explanation about why this Court should consider the two points not raised in the denial letter.

**B.** **Hanover has a duty to defend Innovak in the Lawsuit because it alleges that Innovak published software that made the Plaintiff's PPI available to third-party hackers**

The only issue discussed in any manner in Hanover's denial letter that approaches South Carolina's law for coverage communication is its assertion that the Underlying Complaint does not allege that Innovak directly published the Plaintiffs' PPI. The relevant part of the Part B policy provides that there is coverage for ". . . publication, ***in any manner***, of material that violates a person's right to privacy." (emphasis supplied) South Carolina Supreme Court has stated:

> Insurance policies are subject to the general rules of contract construction. [citation omitted] This Court must give policy language its plain, ordinary and popular meaning. [citation omitted] Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and against the insurer. *Diamond State Ins. Co. v. Homestead Industries*, 318 S.C. 231, 456 S.E.2d 912 (S.C. 1995), at S.C. 238, S.E.2d 915.

Hanover claims that the phrase "in any manner" ". . . expands the categories of publication (such as email, handwritten

letters, and perhaps blast faxes)." The authority cited for this proposition is *Creative Hospital Ventures, Inc. v. U.S. Liability Ins. Co.*, 444 F. Appx. 370, 375-376 (11th Cir. 2011). The issue in that case was whether U.S. Liability Insurance Company, under Florida law, had a duty to defend Creative Hospital Ventures in an action where the underlying suit alleged that Creative Hospital Ventures violated its credit card customers rights to privacy under the Fair and Accurate Credit Transaction Act by providing its customers with receipts that disclosed more than five digits of their credit cards and the credit cards' expiration dates. The sentence recited in Hanover's motion is pure dicta arising in that context.

Here, Innovak is accused in the Lawsuit of publishing software that permitted third parties to obtain the Plaintiffs' PPI. "In any manner" includes direct publication of PPI and negligent failure to prevent third parties from obtaining the PPI. Hanover offers no explanation beyond its recitation of pure dicta about the plain meaning of "in any manner" in the context of this case. Dictionary.com lists the following as synonyms of "in any manner": "in any event" and "in any case."[3] Plainly, publishing software that permits members of the public with hacking skills to access to PPI, at the very least, is a publication made "in any event" and "in any case."

---

[3] www.thesaurus.com/browse/in%any%20manner.

Innovak International, Inc. v. The Hanover Insurance Company; Case No. 8:16-cv-02453-MSS-JSS
Plaintiff's Response in Opposition to Defendant's Motion for Final Summary Judgment and Supporting Memorandum of Law; Page 8

In its motion for partial summary judgment, Innovak cited and emphasized the decision in *Hartford Cas. Ins. Co. v. Corcino & Associates*, as support for its position.[4]   In that case, the Court considered the application of Part B coverage that provided coverage for an insured's damages "because of . . . electronic publication of material that violates a person's right to privacy."[5]   Unlike this case, the policy language was narrower than the policy language here because it did not provide for coverage for electronic publication of material *in any manner*.   As in this case, the Court compared the allegations in the underlying complaint with the language in the policy and stated:

> Interpretation of an insurance policy . . . follows the general rules of contract interpretation. 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties.'. . . Such intent is to be inferred, if possible, solely from the written provisions of the contract.
>
> . . .
>
> "[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer." [citations omitted] *Id.,* U.S. Dist. Lexis at 9-10.

---

[4] 2013 U.S. Dist. LEXIS 152835, 2013 WL 5867527 (C.C. Cal.  October 7, 2013) appeal dismissed by stipulation 2:13-cv-03728 [ DKT. 37] A copy of this decision is attached and marked Exhibit 1.

[5] Additionally, unlike this case, the coverage was subject to an exclusion that excepted coverage "arising out of the violation of a person's right to privacy created by any state or federal act."  There is no such exclusion in the subject policy.

In sum, the Court applied the analysis and rules of construction that are applicable here.

Corcino, Hartford's insured, was an independent contractor responsible for the maintenance of Stanford Hospital's confidential patient records. An applicant for a position in Corcino was given access to these records as part of a test to determine whether he had sufficient computer skills for the position. The applicant, in turn, posted the records on the internet on a public website called "Student of Fortune" that was an online marketplace for students who need help with homework. Members of the public who could access the website had access to the confidential material. The applicant was not Corcino's employee who posted information in the course and scope of his employment. Like Innovak is alleged to have allowed, Corcino negligently allowed the confidential information to be seen by the website's customer. Hanover's motion does not comment on this case.[6]

Hartford's motion emphasizes three decisions as the basis for the claim that Innovak's voluntary and intentional

---

[6] Hanover's response to Innovak's motion for partial summary judgment states that the Corcino decision is distinguishable because "[t[he underlying claim in *Corcino* - unlike the claims here - involved the insured intentionally and voluntarily providing the personal information to the nefarious individual who later published the information online." [DKT 20, page 5 of 12]. In this action, Innovak is alleged to have negligently published software that made the PPI available to a nefarious individual. There is no basis for distinguishing the *Corcino* decision.

publication of software that made the PPI available to nefarious individuals does not constitute a direct action by Innovak.

First, it refers to a transcript of an argument for summary judgment in a New York state trial court. The trial judge decided that the language in the insurance policy identical to the subject policy here did not cover losses arising out of third-party hackers acquisition of Sony's customers PPI. *Zurich American Insurance Co. v. Sony Corp. of America*, No. 651982/2011, 2104 N.Y. Misc. LEXIS 5141 (New York Sup. Ct. February 21, 2014). Regrettably, Hanover's motion fails to mention that the trial judge, instead of authoring an opinion, stated "Why don't we leave it like this. <u>Because this is going to require immediate appellate authority</u>." *Id.*, N.Y. Misc. LEXIS at 73. (emphasis added). The case was settled shortly after the trial court's ruling. Commentators stated that the reason for the settlement was that Zurich did not want to create adverse appellate authority. [DKT. 19 page 15 of 17 n. 4] In New York, the doctrine of *stare decisis* applied to decisions made by intermediate appellate courts or the Court of Appeals, the final appellate Court. *Mountain View Coach Lines v. Storms*, 476 N.Y.S.2d 918 at 919(N.Y. Ap. Ct. 2d Div., 1984). The transcript of the *Sony* argument has no precedential effect in New York.

Hanover's second emphasized case is *Butts v. Royal Vendors*, 504 S.E.2d 911 (W.Va. 1998). [DKT 21, pages 20-21] In that case,

a company was sued for wrongful discharge and for wrongfully inducing a doctor to give up an employee's medical information and to breach his doctor's patient confidentiality obligations on the basis of a slanderous statement. The company filed suit for a declaration that it was covered for libel and slander under the part B personal injury coverage of its commercial general liability policy. The Court concluded that the insurer had a duty to defend its insured even though the underlying complaint did not expressly seek damages for libel or slander. *Id. at* 916.

The *Butts Court* also stated that there was no coverage under the Part B personal injury coverage for invasion of the underlying plaintiff's right of privacy. Hanover contends that the Court held that "publication by a third party did not trigger personal and advertising liability because the insured must commit the affirmative act of publication." [DKT 21, page 20 of 24] This is incorrect. The underlying complaint alleged that the employer induced the doctor to breach his duty to maintain his doctor-patient confidentiality. The Court stated:

> Accordingly, to invoke coverage under this policy section Mr. Butts would need to set forth an allegation that Royal Vendors published material that invaded his privacy. A fair reading of the complaint suggests, however, that what Mr. Butts is alleging is that Royal Vendors induced a third-party-- Dr. Ingersoll-- to publish material that violates his right to privacy. Since the policy was not written to cover publication by a third-party, we find no

> coverage under this section of the policy. Thus, we
> find no error in the lower court's ruling that Aetna
> had no duty to defend under subsection (e) of the
> Personal and Advertising Injury section of the policy.
> *Butts, supra* 917.

Plainly, this conclusion does not relate to the facts alleged in the underlying complaint in this action. Here, the underlying complaint explicitly identifies Innovak's publication of its software in a manner that made the Plaintiffs' PPI available and/or accessible to third parties. Innovak is not accused of inducing anyone to do anything. It is accused of publishing software that made PPI generally available to persons with skills to hack computers.

Hanover's third and final case of emphasis is *Miken Sales, Inc. v. Diamond State Ins. Co.*, 2007 U.S.Dist.LEXIS 74221 (C.D. Cal. April 19, 2007). [DKT. 21, pages 20-21 of 24] In that action, the insured, a clothing manufacturer, was sued by the owner of a clothing line using a "Surf Angel" trademark. The complaint alleged that the "Surf Angel" trademark appeared on garments that it sold to a retailer named Mervyn's Department Store. In the suit for declaration, the manufacturer contended that it was covered for "advertising injury" in its part B personal injury coverage. The court rejected this conclusion and stated:

> Defendant (insurer) takes the position that it did not
> have a duty to defend Plaintiff because the
> *Kraszewski* complaint ("*Kraszewski* complaint")[the

Innovak International, Inc. v. The Hanover Insurance Company; Case No. 8:16-cv-02453-MSS-JSS
Plaintiff's Response in Opposition to Defendant's Motion for Final Summary Judgment and Supporting Memorandum of Law; Page 13

> underlying case] did not allege that Plaintiff engaged
> in any advertising activity.
>
> . . . the *Kraszewski* complaint does not allege that
> Plaintiff advertised, or attempted to advertise,
> products bearing the "Surf Angel" mark. Rather,
> Kraszewski simply claimed that Miken manufactured
> allegedly infringing clothes and then sold those
> clothes to Mervyn's. *Id.* at 7-8.

Hanover claims that ". . . the court found that an insured must engage in specific actions under the 'personal and advertising policy' definition and not merely enable a third party's action to trigger coverage." [DKT 21, pages 20-21]  In fact, the court found that, under the language of the "advertising injury" provisions of the policy, the insurer did not have to defend Miken Sales under the circumstances alleged in the complaint. It makes no such conclusion with respect to the policy language or the circumstances in this action. Moreover, the allegations in the Lawsuit concern direct action by Innovak that caused the inappropriate release of PPI.[7]  It is accused of directly making the information available to the computer hacking public because of the manner in which it prepared and maintained the software that it published, just as the retailer and not the clothing

---

[7] A summary of the Plaintiffs' allegations against Innovak are contained in paragraph 2 of the amended complaint.  It states in pertinent part:

> **Innovak** failed and/or refused to take adequate and reasonable
> precautions or measures to insure that **its** software, database,
> and/or its cyber data storage systems were adequately encrypted
> and/or protected; failed to take reasonable steps to prevent this
> reasonably foreseeable harm from happening . . .

These are the actions undertaken by **Innovak**, and not the actions of a third party who is not in privity with the insurance contract.

manufacturer directly committed acts that might amount to "advertising injury."

**C.**   **The coverage for alleged invasion of the underlying Plaintiffs' right to privacy does not require an intentional act by Innovak.**

As noted, Hanover's addition of its intentional act argument is impermissible under South Carolina law. Even if it were permissible, its argument cannot be reconciled with South Carolina law.

In multiple cases, insurers regularly disclaim coverage under part B coverage because the underlying complaint alleges the commission of intentional acts. They base such denials on language in the part B personal injury exclusions that is claimed to exclude any intentional acts. The insuring agreement language in the policy in this case states:

**2. Exclusions**

**a. Knowing violation of Rights of another.**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

Hanover's sixth affirmative defense in its answer and affirmative defenses in this action alleges that there is no coverage because of this exclusion. [DKT. 3, page 6] Hanover's memorandum reverses its course and claims that there can be no coverage for Innovak's alleged violation of individuals' right

to privacy because Innovak was negligent. Hanover seeks a decision justifying a construction of the Part B coverage that precludes coverage when the insured is negligent and when the insured acts intentionally.  It seeks a result that its part B coverage is completely illusory.

Hanover cites *S.C. State Budget & Control Bd. v. Prince*, 304 S.C. 241, 403 S.E.2d 643 (S.C. 1991) as supporting its claim that an invasion of rights of privacy must be intentional. [DKT. 21, page 22, n. 8]  This is plainly inaccurate.  The case involved allegations of defamation.  The Court's conclusion was that the language in the policy was ambiguous.  One possible construction of the policy was that intentional acts were covered.  In consequence, the ambiguity had to be construed in the favor of the insured.[8]  There is nothing in the decision that hints, suggests or implies that an intentional act is required.

---

[8] The Court stated:

> The policy's definition of covered personal injuries specifically includes defamation. The policy also specifically covers other intentional torts: false arrest, false imprisonment, malicious prosecution, wrongful entry or eviction or other invasion of the right of private occupancy, and assault and battery not committed by or at the direction of the insured unless committed for the purpose of protecting persons or property. Thus, the policy purports to provide coverage for certain intentional torts under the policy's definition of covered personal injuries, yet it attempts to deny coverage for injuries expected or intended under the definition of an occurrence. This internal inconsistency in the policy renders it ambiguous and when a policy is "susceptible to more than one reasonable interpretation, one of which would provide coverage, this Court must hold as a matter of law in favor of coverage." [citation omitted]  *Prince* at 304 S.C. at 11-12, 403 S.E.2d at 647.

Instead, it implies that both intentional and negligent acts are covered under Part B.

The ambiguity in *Prince* arose out of a conflict in language in the policy's Part B insurance agreement that limited coverage to an "occurrence" or accident while the policy also covered defamation and other intentional torts. The policy language in *Prince* is not present in Hanover's personal injury coverage insuring agreement. Cases decided after *Prince* denied coverage for intentional acts in cases where the policy included a specific exclusion for intentional acts. Hanover's policy contains exclusion 2.a quoted above (page 16). In these cases, coverage for intentional acts is denied. *State Farm Fire & Cas. Co. v. Weaver*, 585 F.Supp. 2d 722 (D.S.C. 2008); *see*, *Dupps v. Underwriters at Lloyd's London*, 2013 U.S. Dist. LEXIS 196932 (D.S.C. January 9, 2013). There is no South Carolina authority that requires Innovak's actions to be intentional.

D.   **Innovak is alleged to have published its software**

Hanover's final basis for denial of coverage is the claim that Innovak did not "publish" the PPI. As noted, this basis for denial was not articulated in the denial of coverage letter and cannot be considered by this court.

Nonetheless, there is no authority justifying Hanover's position. As noted above, Hanover emphasizes the decision in *Butts v. Royal Vendors,* 504 S.E.2d 911 (W.Va. 1998). [DKT 21,

pages 20-21] This decision appears to endorse the proposition that "publishing" under the policy at issue in the case occurred when the defamatory information was conveyed to only one person as opposed to publication to a sector of the general public. *Id.* at 504 S.E.2d at 913.

Hanover also claims that "[h]ere, the Innovak data breach does not involve a public dissemination of the Underlying Plaintiffs' PPI, as the plain meaning of the term requires." [DKT. 21, page 19] This statement cannot be reconciled with the language in the Lawsuit's amended complaint. The amended complaint alleges that an unspecified number of hackers obtained the PPI of numerous individuals in multiple states.[9] Plaintiffs claim that Innovak's software was negligently designed and enabled anyone in the public who had sufficient computer ability to hack into its system.[10] These allegations are not unlike the unauthorized publication of medical records in *Hartford Cas. Ins. Co. v. Corcino & Associates*, 2013 U.S. Dist. Lexis 152836, 2013 WL 5687527 (C.D. Cal. 2013) which were alleged to be

---

[9] Paragraph 3 alleges that the PPI of individuals was sustained by "the end users of Innovak's software and/or Portals across the United States." [DKT 19-1, page 30] Paragraph 18 alleges that ". . . Innovak designs, develops, and sells accounting and payroll computer software systems to schools, school districts, and to other entities across the United States." [DKT 19-1, page 35]. Paragraph 1 alleges that ". . . hackers appropriated the personal private information ("PPI") stored on its software, database, and /or its portals."

[10] Paragraph 39 alleges that "Innovak owed a duty to the Plaintiffs and the members of the putative class to exercise reasonable care in designing and developing software to retain, secure, safeguard, and protect their PPI from being compromised, lost, stolen, accessed, misused and/or utilized by **unauthorized individuals.**" (emphasis supplied) [DKT. 19-1, page 40].

available to anyone who could access the "Student of Fortune" website.

Hanover cites *Traveler's Indemnity Co. v. Portal Health Care Solutions*, 35 F.Supp 3d 765 at 770 (E.D. Va. 2014) *aff'd sub nom. Traveler's Indemm. Co. v. Portal Health Care Solutions,* 644 F.Appx. 245 (4th Cir. 2016) [cited by Traveler's DKT. 21, page 19, n. 74]. There, the underlying complaint alleged that Portal Health Care Solutions, a company responsible for maintaining hospitals' electronic medical records, failed to safeguard the records of patients in the Glen Falls Hospital and exposed the confidential material to individuals searching an individual patient's name. The appearance of this data was discovered by former patients who "googled" their own names. Portal's insurance policies provided liability coverage for "electronic publication of material that . . . gives unreasonable publicity to a person's private life." Traveler's refused to defend Portal on the theory that there was no publication of the confidential material because the complaint alleged that the information was seen by individual patients and not by third parties. *Id.* at 770. Comparing the language in the policy with the allegations in the underlying complaint, the court concluded that Portal's alleged conduct constituted "publication" within the meaning of the policy. The court stated that "Publication occurs when the information is 'placed before the public' not when a member of

the public reads the information placed before it." *Id.* at 771. Clearly, the allegations in the Lawsuit allege that Innovak published software that was accessible to the population of skilled hackers, and that the PPI was seen by third parties.

Additional cases cited by Hanover in support of its position on "publication" have no apparent relation to the issues in this action. Both *Creative Hospital Ventures, Inc. v. U.S. Liability Ins. Co.*, 444 F.Appx. 370, 375-376 (11th Cir. 2011) and *Whole Enchilada, Inc. v. Traveler's Property & Cas. Co.*, 581 F.Supp.2d 677 (W.D. Pa., 2008)(cited at DKT 21, page 19, n. 74) involved underlying complaints in which credit card customers received receipts revealing more than five digits of their credit card numbers or their card's expiration date. Both courts decided that there was no "publication" of this information to the general public because the information was only published to the customers as not to the general public.

In *Terra Nova Ins. Co. v. Fray-Witzer*, 449 Mass. 406, 869 N.E.2d 565 (Mass. 2007), the Supreme Court of Massachusetts determined that the delivery of 60,000 unsolicited faxes constituted both a publication and an invasion of privacy that triggered part B coverage articulated in the same language at issue in this case. The invasion of privacy arose because it potentially reached persons who wished to be secluded from unsolicited sales promotions. This decision does not give rise

Innovak International, Inc. v. The Hanover Insurance Company; Case No. 8:16-cv-02453-MSS-JSS
Plaintiff's Response in Opposition to Defendant's Motion for Final Summary Judgment and Supporting Memorandum of Law; Page 20

to any hint, suggestion, or inference that Innovak failed to "publish" the PPI.

## IV.   CONCLUSION

The unambiguous language of the part B coverage for invasion of privacy applies to the Lawsuit. Accordingly, Hanover's dispositive motion for final summary judgment must be denied.

WHEREFORE, Plaintiff prays that the Court will enter an order denying Defendant's motion.

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to all counsel of record by way of this Court's CM/ECF filing system on the date signed hereunder.

**CPLS, P.A.**
Attorneys|Consultants|Mediators
201 East Pine Street, Suite 445
Orlando, FL 32801
Tel 407-647-7887/Fax 407-647-5396
*Counsel for Plaintiff*
CPLS File No. 2-30

Date: April 11, 2017

_____
George E. Carr, Esq.
Florida Bar No. 205443
gcarr@cplspa.com
Samuel A. Walker, Esq.
Florida Bar No. 103190
swalker@cplspa.com
Tee Persad, Esq.
Florida Bar No. 0045594
attorneypersad@cplspa.com

 LexisNexis®

**User Name:** George Carr
**Date and Time:** Tuesday, January 31, 2017 11:19:00 PM MST
**Job Number:** 42728696

## Document (1)

1. _Hartford Cas. Ins. Co. v. Corcino & Assocs., 2013 U.S. Dist. LEXIS 152836_

   **Client/Matter:** -None-
   **Search Terms:** Stanford and Hospital and record! and online and California and applicant
   **Search Type:** Terms and Connectors
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | -None- |



🅐 Neutral

As of: February 1, 2017 1:19 AM EST

## *Hartford Cas. Ins. Co. v. Corcino & Assocs.*

United States District Court for the Central District of California

October 7, 2013, Decided; October 7, 2013, Filed

CV 13-3728 GAF (JCx)

**Reporter**

2013 U.S. Dist. LEXIS 152836 *; 2013 WL 5687527

Hartford Casualty Insurance Company v. Corcino & Associates et al

**Prior History:** *Hartford Cas. Ins. Co. v. Corcino & Assocs., 2013 U.S. Dist. LEXIS 83464 (C.D. Cal., June 11, 2013)*

## Core Terms

right to privacy, motion to dismiss, damages, coverage, privacy, insured, policy exclusion, common law, violations, statutes, reasonable interpretation, judicial notice, state court, allegations, *records*, website

**Counsel:** [*1] Attorneys Present for Plaintiffs: None.

Attorneys Present for Defendants: None.

**Judges:** GARY ALLEN FEESS.

**Opinion by:** GARY ALLEN FEESS

## Opinion

**CIVIL MINUTES - GENERAL**

**Proceedings: (In Chambers)**

**ORDER RE: MOTION TO DISMISS**

**I.**

**INTRODUCTION**

This is an insurance declaratory relief action arising out of state court litigation.

Corcino & Associates ("Corcino") and **Stanford Hospital** and Clinics ("**Stanford**") are currently named defendants in state court litigation in which they have allegedly violated the privacy rights of numerous patients. **Stanford** allegedly supplied the information to Corcino who allowed it to be used by a job **applicant** who, in turn, posted the data on a public website. In that litigation, **Stanford** has cross-claimed against Corcino for indemnity and contribution.

Hartford Casualty Insurance Company issued a comprehensive general liability policy to Corcino under which Corcino has apparently requested that Hartford defend and indemnify it in the action. Hartford has accepted the defense of the actions but with a reservation of rights. Hartford contends that it has no obligation to defend and indemnify on the ground that the dispute in this case is subject to a policy exclusion that bars recovery for violations [*2] of statutorily created rights. Hartford has, therefore, brought this lawsuit against Corcino, **Stanford** and others seeking a declaration that it has no obligation to indemnify the claims being made in the underlying state court litigation.

**Stanford** and Corcino move to Dismiss Hartford's complaint on the grounds that it fails to state a claim upon which relief can be granted. (Docket No. 18, [Motion for Joinder and Motion to Dismiss]; Docket No. 19, [Motion to Dismiss ("Mem.")].) They contend that the right at issue has long been recognized under the common law and that the creation of new statutory remedies for the violation of that right do not place the claims within the scope of the policy exclusion. The Court agrees. As discussed in greater detail below, the motions are **GRANTED** and the action is **DISMISSED WITH PREJUDICE** as to **Stanford** and Corcino.

**II.**

**BACKGROUND**

**A. REQUEST FOR JUDICIAL NOTICE**

2013 U.S. Dist. LEXIS 152836, *2

*Stanford* requests that the Court take judicial notice of various *records* of state courts and legislative history. (Docket No. 17-2, [Request for Judicial Notice ("RJN")].) "Under *Rule 201 of the Federal Rules of Evidence*, the court may take judicial notice of the *records* of state courts [and] the [*3] legislative history of state statutes." *Louie v. McCormick & Schmick Rest. Corp., 460 F. Supp. 2d 1153, 1155, fn. 4 (C.D. Cal. 2006)*. Accordingly, the Court **GRANTS** *Stanford*'s request for judicial notice.

## B. THE UNDERLYING LITIGATION

*Stanford*, Corcino, and others have been sued in two state court actions — *Springer, et al. v. Stanford Hospital and Clinics, et al.*, Los Angeles Superior Court Case No. BC470522 ("Springer") and *Sherald v. Stanford Hospital and Clinics, et al.*, Santa Clara Superior Court Case No. 1-12-CV-226388 ("Sherald") (collectively, the "Underlying Litigation") — for an alleged posting of confidential medical information on a public website. (Docket No. 7, [First Amended Complaint ("FAC")] ¶¶ 8-15.) The plaintiffs in the Underlying Litigation claim that "the private, confidential, and sensitive medical and/or psychiatric information of almost 20,000 patients of *Stanford*'s Emergency Department appeared on a public website and remained publicly available *online* for almost one full year." (FAC, Ex. A ¶ 3.)

This medical information, according to the underlying plaintiffs, was provided by *Stanford* to Corcino who, in turn, gave it to a Doe defendant who had applied for [*4] employment with Corcino. (Id. ¶ 31.) The underlying plaintiffs allege that after Corcino asked the Doe defendant to perform certain tasks with the data as part of a "test for employment suitability," he posted the information on "a public website called 'Student of Fortune,' which is an *online* tutorial marketplace for students who need help with homework, with a request for help converting the information ...." (Id. ¶¶ 31-32.) The information included patient names, medical *records*, *hospital* account numbers, admission/discharge dates, diagnosis codes, and billing charges. (Id. ¶ 28.) The underlying plaintiffs allege that their information remained publicly available on the "Student of Fortune" website for almost one year, until it was found by one of the plaintiffs. (FAC, Ex. B ¶ 9.)

The Sherald complaint contains causes of action for violations of the plaintiff's constitutional right of privacy, her common law privacy rights, and *California Civil Code sections 56.36 et seq.* ("Confidentiality of Medical Information Act" or "CMIA"). (Id. ¶¶ 39-64.) The Sherald complaint seeks actual, statutory, and punitive damages, as well as attorney's fees, injunctive relief and interest. (Id. at 14-31.) [*5] In partially overruling *Stanford*'s demurrer to the Sherald complaint, the trial court found that the alleged facts supported not only the plaintiff's statutory damage claim under CMIA, but also her constitutional and common law privacy causes of action. (RJN, Ex. A [Oct. 10, 2012 Order Re Demurrers and Motions to Strike Portions of Plaintiff Parenza Sherald's Complaint] 2:1-2:28.)

The Springer complaint states claims for statutory damages under CMIA and *California Welfare & Institutions Code sections 5330 et seq.* ("Lanterman Petris Short Act" or "LPS"). (FAC, Ex. A ¶¶ 78-116.) The defendants demurred to the Springer complaint on the ground that the plaintiffs failed to allege any "actual injury." The trial court overruled the demurrer, stating that regardless of whether they had pled separate causes of action for violation of their constitutional and common law privacy rights, their complaint alleged "actual injury" as a matter of law because it alleged an invasion of the same legally protected interest in medical privacy that the *California* courts have held may give rise to constitutional and common law claims. (RJN, Ex. B [Reporter's Transcript of Sept. 12, 2012 Hearing] 17:26-18:5) [*6] (citing *Pettus v. Cole, 49 Cal. App. 4th 402, 440, 57 Cal. Rptr. 2d 46 (Ct. App. 1996)*.)

## C. THE HARTFORD POLICY

Hartford issued to Corcino a "Spectrum" commercial general liability Policy No. 72 SBM TV7693DX ("Policy"). (FAC ¶¶ 6-7.) The "personal and advertising injury" insuring clause of the Policy promises to pay amounts Corcino becomes "legally obligated to pay as damages because of . . . electronic publication of material that violates a person's right of privacy." (Id. ¶¶ 18-19.) However, the Policy contains the following exclusion:

This insurance does not apply to:

* * *

p. Personal And Advertising Injury
(11) Arising out of the violation of a person's right to privacy created by any state or federal act.

    However, this exclusion does not apply to liability for damages that the insured would have in absence of such state or federal act.

(Id. ¶ 20.)

Hartford's complaint does not dispute that the Underlying Litigation involves claims that Corcino is

liable for electronic publication of material that violates the underlying plaintiffs' rights of privacy. Instead, Hartford seeks a judicial declaration that there is no coverage for the "statutory relief" sought by the underlying plaintiffs because this relief [*7] falls within the Policy exclusion. (Id. ¶¶ 21-22.)

III.

DISCUSSION

A. STANFORD'S MOTION TO DISMISS

1. LEGAL STANDARD UNDER RULE 12(B)(6)

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. See _Fed. R. Civ. P. 12(b)(6)_. On a motion to dismiss under _Federal Rule of Civil Procedure 12(b)(6)_, a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party." _Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996)_; see also _Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120-21 (9th Cir. 2007)_. Dismissal under _Rule 12(b)(6)_ may be based on either (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. _SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996)_ (citing _Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984))_.

Under _Rule 8(a)(2)_, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." _Fed. R. Civ. P. 8(a)(2)_. The Supreme Court has interpreted this rule to allow a complaint to survive [*8] a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" _Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)_ (quoting _Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))_. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Id._ (citing _Twombly, 550 U.S. at 556)_. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief. _Id. at 679_.

A complaint generally need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." _Twombly, 550 U.S. at 555_ (citation, alteration, and internal quotations omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." _Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)_. [*9] That is, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." _Iqbal, 556 U.S. at 678-79_; see also _Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)_.

2. INTERPRETATION OF INSURANCE POLICIES UNDER CALIFORNIA LAW

In **California**, "interpretation of [insurance] policy language is a question of law." _MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 641, 3 Cal. Rptr. 3d 228, 73 P.3d 1205 (2003)_; _Rosen v. State Farm Gen. Ins. Co., 30 Cal. 4th 1070, 1074, 135 Cal. Rptr. 2d 361, 70 P.3d 351 (2003)_. Moreover:

> Interpretation of an insurance policy . . . follows the general rules of contract interpretation. 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties.'. . . Such intent is to be inferred, if possible, solely from the written provisions of the contract.

_MacKinnon, 31 Cal. 4th at 647_ (citations omitted); see also _Rosen, 30 Cal. 4th at 1074_. In other words, "[t]he rules governing policy interpretation require us to look first to the [*10] language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." _Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995)_.

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer." _MacKinnon, 31 Cal. 4th at 648_ (citations omitted); see also _Powerine Oil Co., Inc. v. Super. Ct., 37 Cal. 4th 377, 391, 33 Cal. Rptr. 3d 562, 118 P.3d 589 (2005)_; _Aydin Corp. v. First State Ins. Co., 18 Cal. 4th 1183, 1193, 77 Cal. Rptr. 2d 537, 959

*P.2d 1213 (1998)*. For this reason, the Ninth Circuit has observed that "[i]f any reasonable interpretation of the policy would result in coverage, a court must find coverage even if other reasonable interpretations would preclude coverage." *Bodell v. Walbrook Ins. Co.*, *119 F.3d 1411, 1413 (9th Cir. 1997)* (citation omitted); *see also PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, *394 F.3d 761, 765 n.5 (9th Cir. 2005)*.

### 3. APPLICATION

*Stanford* urges the Court to dismiss Hartford's complaint because the Policy exclusion applies only to violations of rights that were created by statute and the right to medical privacy at issue in the [*11] Underlying Litigation was not created by statute, but rather is an existing constitutional and common law right. (Mem. at 9, 12.) For the reasons set forth below, the Court concludes that this is a reasonable interpretation of the Policy and thus, under *MacKinnon*, Hartford's complaint must be dismissed.

In order to determine the scope of the exclusion, the Court first considers the language of the policy. Hartford's exclusion expressly applies only to injury that arises out of the violation of a person's "right to privacy created by any state or federal act," and not to "liability for damages that the insured would have in absence of such state or federal act." (FAC ¶ 20.) *Stanford* argues, and the Court agrees, that the "plain meaning of this phrase is clear: the Exclusion applies if, and only if, a claim arises out of the invasion of a privacy right that is created by statute." (Mem. at 12.) In its complaint, Hartford does not dispute this reading of the policy language, but rather states that "as a result of the language," the statutory relief sought by the underlying plaintiffs against Corcino falls under this exclusion because "such relief would arise out of the violation of a person's [*12] right to privacy created by a state act(s) for which [Corcino] would have no such liability in the absence of such state act(s)." (FAC ¶ 21.)

However, as noted by *Stanford*, the right to medical privacy at issue in the Underlying Litigation was not created by either of the two statutes under which the plaintiffs seek relief. *Id.* Since at least 1931, *California* has recognized both a constitutional privacy right and a common law tort cause of action for violations of the right to privacy. *Melvin v. Reid*, *112 Cal. App. 285, 291, 297 P. 91 (Ct. App. 1931)*. The constitutional right to privacy that had been previously found to impliedly exist was made express in 1972, when voters approved a ballot initiative to amend the Constitution to expressly

include an "inalienable" right of privacy. *Board of Medical Quality Assurance v. Gherardini*, *93 Cal. App. 3d 669, 676-79, 156 Cal. Rptr. 55 (Ct. App. 1979)*. Although courts have expressly recognized a constitutional right of privacy with respect to medical **records** since at least 1979 (*id.*), medical **records** have been considered private and confidential for well over 100 years at common law. See, e.g., *In re Redfield's Estate, 116 Cal. 637, 644, 48 P. 794 (1897)*. [1]

The legislative history of the LPS and CMIA, under which the plaintiffs seek relief against Corcino, demonstrates that these statutes were intended not to create new privacy rights, but rather to codify existing rights and create effective remedies that would encourage affected individuals to enforce them. (RJN, Ex. F [September 14, 1979 Enrolled Bill Report from the Department of Finance]) (noting that the bill "further [e]nsures an individual's right to privacy.") Both statutes provide that their statutory damages remedies are available in addition to traditional tort damages for the same privacy breaches, and do not replace them. *Cal. Civ. Code §56.36(b)*; *Cal. Welf. & Inst. Code § 5330*. Thus, because the LPS and CMIA do not create new privacy rights and because the Policy exclusion by its terms "does not apply to liability for damages that the insured would have in absence of such state or federal act," the [*14] relief sought under these statutes can reasonably be interpreted to fall outside of Hartford's Policy exclusion.

Although Hartford attempts to change course in its Opposition by insisting that it "seeks only a ruling that it will owe no duty to indemnify Corcino for the statutory penalties created by the CMIA and the LPS," this argument is unavailing. (Docket No. 26, [Opposition to Motion to Dismiss ("Opp.")] at 1.) Hartford attempts to evade coverage by arguing that its Policy "only covers damages because of 'personal and advertising injury,'" and that the "statutory penalties sought under the CMIA and LPS do not constitute 'damages' awarded for an 'injury . . .'" (Opp. at 5.) As discussed above, the LPS and CMIA were enacted to create effective remedies for breaches of an individual's right to medical privacy. The statutes thus permit an injured individual to recover damages for breach of an established privacy right, and as such, fall squarely within the Policy's coverage. If

---

[1] Indeed, the right to medical [*13] privacy is implicitly recognized in the physician-patient privilege, *Cal. Evid. Code § 992*, which has been part of the common law for as long as *California* has been a state.

2013 U.S. Dist. LEXIS 152836, *13

Hartford had intended to include a specific distinction in its exclusion, it could have done so when drafting its Policy. However, the Court cannot read restrictive language into the Policy that is not actually [*15] there. See _Safeco Ins. Co. of America v. Robert S., 26 Cal. 4th 758, 764, 110 Cal. Rptr. 2d 844, 28 P.3d 889 (2001)_ ("We cannot read into the policy what [the insurer] has omitted. To do so would violate the fundamental principle that in interpreting contracts, including insurance contracts, courts are not to insert what has been omitted.").

The Court concludes that **_Stanford_**'s interpretation of the Policy exclusion's scope based on the language and plain meaning of the exclusion is reasonable. Accordingly, the Court must find that any relief awarded under the LPS and CMIA would be covered, rather than excluded, under Hartford's Policy. See _Bodell, 119 F.3d at 1413_ (stating that "[i]f any reasonable interpretation of the policy would result in coverage, a court must find coverage even if other reasonable interpretations would preclude coverage") (citation omitted). Thus, because any amendment by Hartford would be futile, **_Stanford_**'s motion to dismiss Hartford's complaint is **GRANTED with prejudice**.

### B. CORCINO'S MOTION TO DISMISS

Because the Court grants Corcino's motion to join **_Stanford_**'s motion to dismiss and grants with prejudice **_Stanford_**'s motion to dismiss, Corcino's motion to dismiss is thus **DENIED as moot**.

### IV.

### CONCLUSION

For [*16] the foregoing reasons, the Court **GRANTS with prejudice** _Stanford_'s motion to dismiss in which Corcino joins. Corcino's motion to dismiss is thus **DENIED as moot**.

**IT IS SO ORDERED.**

---

End of Document